Leonard Jerome **BASTIDA**, Petitioner-Appellee,

v.

C. Murray **HENDERSON**, Warden, La. State Penitentiary, Respondent-Appellant.

No. 73-2399

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Nov. 6, 1973.

Rehearing and Rehearing En Banc Denied Jan. 14, 1974.

---

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

Shirley G. Wimberly, Jr., Asst. Dist. Atty., La. Dept. of Justice, Crim. Div., G. Thomas Porteous, Jr., Asst. Atty. Gen., William J. Guste, Jr., Atty. Gen., S. J. Dileo, Jr., Sp. Counsel, Baton Rouge, La., for respondent-appellant.

George M. Strickler, Jr., New Orleans, La. (Court-appointed), for petitioner-appellee.

Before GEWIN, COLEMAN and MORGAN, Circuit Judges.

COLEMAN, Circuit Judge:

In this habeas corpus case the District Court granted Leonard Jerome Bastida habeas corpus relief, commanding the State of Louisiana either to retry him within 120 days or release him from custody. We reverse and remand with directions that the petition be dismissed.

Bastida had been convicted of armed robbery. The Supreme Court of Louisiana affirmed his conviction, State v. Bastida, 271 So.2d 854 (La., 1973).

Bastida attacked the validity of a search of his apartment. He claimed that although the affidavit stated sufficient grounds to obtain a warrant for his arrest, it did not allege enough to give rise to probable cause for a search of his premises. Additionally, it was urged that even if probable cause had once existed the police waited too long to obtain the search warrant since nine days had elapsed between the receipt of the underlying information and the execution of the affidavit.

The affidavit for the search warrant was sworn to on April 17, 1972, and read as follows:

"On Friday, April 7, 1972, at about 9:00 PM, a white male named Eurie Marie, residing 600 Bellville, was the victim of an armed robbery which occurred at 4905 Canal St., on the above

date and time. Mr. Marie stated that he had received a phone call from a white female whom he knows as Tina Bacon. Mr. Marie stated that he knows this subject for about 10 years. Tina Bacon requested that Mr. Marie meet her at the Beachcorner Lounge, located in the 4900 block of Canal St., at 9:00 PM, stating that she wished to speak' to him. Mr. Marie stated that he left his residence to meet this female. At about 9:30 PM, Mr. Marie stopped his car in the 4900 block of Canal St., and at this time, Mr. Marie saw Tina Bacon sitting in the 4900 block of Canal St. with two Spanish type males. Mr. Marie got out of his car and at this time, he heard Tina Bacon tell the two white males 'That's him'. At this time, the two white males approached Mr. Marie and both subjects pulled knives and automatic pistols. Both subjects began to stab and cut Mr. Marie about the arms and body. One of the subjects removed Mr. Marie's wallet containing $250.00 and both subjects fled on St. Anthony St. in a downtown direction. Mr. Marie then called the police. On Saturday, April 8, 1972, at about 8:00 PM, Det. Strada received a phone call from a confidential informer who has given him reliable information in the past, who stated to Det. Strada that a Spanish male namely, Leonard Bastida, about 28 yrs. old, and another subject named Terry Morgan, WM, 24, had just told him about an armed robbery they committed Friday night, and that they cut the guy pretty bad and they thought he may have died. These two subjects stated to the informer that they had gotten about $200.00 from the subject. The informer also noticed that both of the subjects were carrying automatic pistols on them at this time. On Monday, April 10, 1972, Det. Strada went to the B of I and pulled a photograph of Leonard Bastida and along with five other photographs showed them to the victim of the Robbery, Mr. Marie. After looking through the photographs, Mr. Marie picked the photograph of Leonard Bastida and stated that this looks very much like one of the subjects who robbed him and stabbed him, but he is not positive from the photograph. On April 16, 1972, a photograph was obtained from the B of I of Terry Morgan and was shown to Mr. Marie along with other photographs. Mr. Marie picked the photograph of Terry Morgan and again stated that he thinks this is one of the subjects, but he is not sure. The informer stated to Det. Strada that Leonard Bastida is a narcotic addict and on the night the informer spoke with Bastida and Morgan, both of the subjects had heroin in their possession and stated that they were going to Bastida's residence to shoot up. Bastida is also known by Det. Strada to be a narcotic addict as Det. Strada has known Bastida for about 12 years. For the above stated reasons, Det. Strada requests that this search warrant be signed giving permission to search the residence of Leonard Bastida for the above named property. On Tuesday, April 11, 1972, Mr. Marie came to the Detective Bureau and gave Det. Strada a photograph of a white female whom he stated is Tina Bacon. Mr. Marie stated he got the photograph from a school yearbook and he positively identified the photograph as Tina Bacon. Det. Strada's informer stated that he knows Tina Bacon to be associated with Leonard Bastida and Terry Morgan.

"It should be noted that the above mentioned informer has given Det. Strada reliable information in the past that has resulted in the arrest and conviction of numerous felons about the city for crimes similar to this one, and also in the recovery of stolen property taken in these crimes."

Upon this affidavit, a Judge of the Criminal District Court for Orleans Parish, Louisiana, on April 17, issued a search warrant for Bastida's apartment and the warrant was executed that same day. The search turned up no pistol but

it did discover unfired bullets and a home-made black leather holster such as could be used with an automatic pistol. These were the items which Bastida unsuccessfully sought in the state courts to suppress.

■ The habeas corpus Judge found that as of April 8 there was probable cause·for the search as to pistols, heroin, and narcotics paraphernalia.[1] With this we agree.[2]

The Court further held, however, that:

"The nine-day delay in application for the warrant removes any probable cause for the belief that the pistols, heroin, and narcotics paraphernalia would still be within the apartment on April 17th. The informer merely stated a basis for belief that the items sought would be in the apartment on April 8th. He made no statement that the items would remain there for as many as nine days."

We are of the opinion that in so holding the District Court substituted its judgment for that of the issuing magistrate.

■ In issuing a search warrant the magistrate must exercise his own judgment as to whether the facts alleged in the affidavit constitute probable cause for issuance of the warrant, he must act on the entire picture disclosed to him, he is entitled to use his common sense, and the courts have gone so far as to say that when this is done his determination is conclusive in the absence of arbitrariness, Coury v. United States, 6 Cir., 1970, 426 F.2d 1354; United States v.

Pascente, 7 Cir., 1967, 387 F.2d 923, cert. denied 390 U.S. 1005, 88 S.Ct. 1248, 20 L.Ed.2d 105; United States v. Serao, 2 Cir., 1966, 367 F.2d 347; United States v. Haskins, 6 Cir., 1965, 345 F.2d 111. In Castle v. United States, 5 Cir., 1961, 287 F.2d 657, vacated for resentencing, 368 U.S. 13, 82 S.Ct. 123, 7 L. Ed.2d 75, the Fifth Circuit specifically adhered to the conclusiveness rule in the absence of arbitrariness.

In this case, the reliable informant stated that on the day after the robbery Bastida and Morgan were still armed with automatic pistols and admitted that they committed the robbery. They feared that they had killed their victim but they had not thrown away their pistols. A very likely place to find them thereafter would either be on the persons of the assailants or about the premises where they lived. In any event, it was not unreasonable or arbitrary for the magistrate to find that there was probable cause to believe such to be the case. It necessarily follows that a statement of the informer (repeated in the affidavit) that the pistols would "still be within the apartment on April 17" was not an indispensable prerequisite to the validity of the warrant issued in reliance upon its allegations.

In Sgro v. United States, 287 U.S. 206, 53 S.Ct. 138, 77 L.Ed. 260 (1932), the Supreme Court first spoke to the issue of timeliness in a case involving a search under the National Prohibition Act. The Court held:

"While the statute does not fix the time within which proof of probable cause must be taken by the judge or

---

[1]. "The informer did state, however, that on April 8, he observed automatic pistols and heroin in the possession of Bastida and Morgan, and further, that he knew it was the intention of Bastida and Morgan to go to Bastida's apartment on April 8 to shoot heroin. Such statement, coupled with the victim's description of the use of pistols in the robbery, and coupled with the detective's corroboration of the fact of Bastida's narcotics addiction sufficiently set forth facts upon which a neutral and detached magistrate could find probable cause for the issuance of a war-

rant to search the apartment on April 8." Bastida v. Henderson, No. 73–312 at 4 (E.D. La., 1973).

[2]. The District Court (Appellate Appendix, 7–8) further held "the affidavit is entirely devoid of any factual basis for believing that rifles, barbiturates, amphetamines, marijuana, knives, or stolen credit cards could be located within Bastida's apartment". This, of course, is a immaterial issue as no such items were introduced in evidence against the defendant.

commissioner, it is manifest that the proof must be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time. Whether the proof meets this test must be determined by the circumstances of each case." 287 U.S. at 210–211, 53 S.Ct. at 140.

The Fifth Circuit seems specifically to have considered this problem only once. In Dixon v. United States, 5 Cir., 1954, 211 F.2d 547, it was held that a four day delay between the ascertainment of probable cause and the issuance of the warrant was not fatal.

*Dixon* was a moonshine whiskey case. The affidavit for the search warrant was executed four days after the affiant had seen Dixon handling some jugs and had drunk some of the whiskey. The Court wrote:

"Appellant further contends that since the affidavit was executed on May 23, 1952, as to possession and concealment on May 19, 1952, that the lapse of four days operated to render the warrant ineffectual, since, *non constat*, the whiskey might have been removed or consumed. But it was held in United States v. Old Dominion Warehouse, 2 Cir., 10 F.2d 736, that the lapse of nine days between the observed offense and the search did not invalidate the warrant; in United States v. McKay, D.C., 2 F.2d 257, and in Hawker v. Queck, 3 Cir., 1 F.2d 77, respectively, that 12 days and 21 days between the offense and the affidavit was not too long; and in United States v. Liebrich, D.C., 55 F.2d 341, that 14 days between the offense and the issuance of the warrant was not fatal. In Dandrea v. United States, 8 Cir., 7 F.2d 861, relied upon by appel-

ant, in which the warrant was invalidated, 42 days had elapsed."

■ A number of the other Circuits have confronted situations similar to the one now before us. In general, the basic criterion as to the duration of probable cause is the inherent nature of the crime. The Circuits hold that where an affidavit recites a mere isolated violation then it is not unreasonable to believe that probable cause quickly dwindles with the passage of time. On the other hand, if an affidavit recites activity indicating protracted or continuous conduct, time is of less significance, United States v. Johnson, 10 Cir., 1972, 461 F. 2d 285; United States v. Mustone, 1 Cir., 1972, 469 F.2d 970; Durham v. United States, 9 Cir., 1968, 403 F.2d 190; and Rosencranz v. United States, 1 Cir., 1966, 356 F.2d 310.

Upon consideration of the foregoing cases, and remembering that in *Sgro, supra,* the Supreme Court said that the determination of timeliness as an element in probable cause must be "determined by the circumstances of each case", we recognize that this alleged robbery was not a continuing offense but it is equally true that the pistols were most likely to remain as continuing articles. They were not liable to the evaporation or consumption that ordinarily befalls whiskey, the subject of the search in *Dixon, supra.*

■ Thus, there is no substantial reason under the circumstances of this case to say as a matter of federal constitutional law that the nine day interval defeated the reasonable probability that the pistol or pistols used in the robbery were at Bastida's quarters.

The Judgment of the District Court is reversed and the cause is remanded with directions to dismiss the petition.

Reversed and remanded with directions.