523 F.2d 734
 UNITED STATES of America, Plaintiff-Appellee,
v.
Lewis Clinton PIKE, Ozane Smith, Clarence Eugene Huey, James
Eldridge Hosmer, William Hundley Baker, III,
Joseph Earl Taunton and Robert Mace Lee,
a/k/a "Bill Bob," defendants-appellants.
 No. 74-4208.
 United States Court of Appeals,
Fifth Circuit.
 Nov. 17, 1975.
 
 Roger A. Brown, Birmingham, Ala., for Pike and Smith.
 Herbert Shafer, Atlanta, Ga., for Huey.
 Edward L. Ramsey, Birmingham, Ala., for Hosmer.
 James H. Hard, IV, Birmingham, Ala., for Baker.
 Mike McCormick, Edward L. Ramsey, Birmingham, Ala., for Taunton.
 William H. Rohr, Birmingham, Ala., for Lee.
 Fred Blanton, Jr., Birmingham, Ala., for Baker, Taunton and Hosmer.
 Wayman G. Sherrer, U. S. Atty., Stephen Salter, Asst. U. S. Atty., Birmingham, Ala., for plaintiff-appellee.
 Appeals from the United States District Court for the Northern District of Alabama.
 Before BELL, THORNBERRY and MORGAN, Circuit Judges.
 THORNBERRY, Circuit Judge:
 
 
 1
 Seven appellants challenge their federal gambling convictions. See 18 U.S.C. § 1955. All appellants argue that the district court's dismissal of count one of the indictment, charging a conspiracy, required dismissal of count two of the indictment, which set out the substantive gambling offense. Appellants Clinton Lewis Pike, Ozane Smith, and Robert Mace Lee challenge the sufficiency of the evidence to sustain their convictions. Appellant Lee further attacks the admission of evidence seized in a search of his automobile pursuant to a warrant procured by local law enforcement officials. For the reasons discussed below, we affirm the convictions of all appellants.
 
 
 2
 On July 11, 1973, the Birmingham, Alabama, police conducted a search of a hotel room that uncovered evidence of appellants' operation of an illegal lottery. Almost one year later, on June 21, 1974, the FBI raided an apartment in Birmingham, and the search incident to that raid uncovered extensive evidence implicating appellants in the continued operation of the lottery. Judge Pointer below found the 1973 search by Birmingham police officers illegal by reason of a facially insufficient affidavit and warrant. After a lengthy hearing, see Kolod v. United States, 1968, 390 U.S. 136, 88 S.Ct. 752, 19 L.Ed.2d 962, Judge Pointer also found that the later FBI search was not tainted by the earlier, illegal search by Birmingham police officers. The evidence introduced at the hearing depicted a very loose and informal collaboration between local law enforcement officials and the FBI in their independent investigations of gambling activities in the Birmingham area. Some interchange of information did occur, and after the 1973 search the FBI was allowed to examine the evidence seized by the Birmingham police. However, evidence introduced at the hearing before Judge Pointer also established that the FBI's investigation of illegal gambling activities had already focused on appellants at the time the Birmingham police conducted their illegal search, and the results of that search only served to confirm prior suspicions. Agent Williams testified that the bulk of the information that went into the affidavit supporting the warrant for the 1974 FBI search was derived independently of the evidence seized in the 1973 search, and an examination of the affidavit lends support to the Williams testimony. The affidavit chronicles a long and intensive FBI surveillance of appellants' activities, details information obtained from a previously reliable informant, and absent the few references to the illegal 1973 search, provides a more than adequate factual basis for the magistrate's determination of probable cause. See Spinelli v. United States, 1969, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637; Aquilar v. Texas, 1964, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723; United States v. Sellers, 5th Cir. 1973, 483 F.2d 37. Neither the fact that the FBI's prior suspicions were confirmed by the illegal 1973 search nor the inclusion of references to that search in the affidavit supporting the federal warrant ipso facto establishes the taint argued by appellants. See United States v. Friedland, 2nd Cir. 1971, 441 F.2d 855; United States v. Schipani, 2nd Cir. 1969, 414 F.2d 1262; cf. Nardone v. United States, 1939, 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307. On the contrary, from our examination of the transcript of the hearing, we cannot say that Judge Pointer erred in finding no taint flowing from the illegal 1973 search to the 1974 FBI raid on appellants' lottery operation. Given the fact of an illegal search, the burden of persuasion lies with the United States to establish the absence of taint. Nevertheless, appellants must "prove that a substantial portion of the case against (them) was a fruit of the poisonous tree." Nardone v. United States, supra; United States v. Nolan, 5th Cir. 1969, 420 F.2d 552, 554-55. Judge Pointer correctly concluded that appellants failed in the necessary proof. Appellants, however, argue that Judge Pointer's dismissal of the conspiracy count was tantamount to a finding that the 1974 FBI search was tainted by the 1973 search, and dismissal of both counts of the indictment was required. The error in appellants' argument stems from a misinterpretation of the reasons behind Judge Pointer's dismissal of the conspiracy count.[1] To have left the conspiracy count in the case would have required the United States to establish a starting date of the conspiracy. Judge Pointer's comments from the bench reveal a fear on his part that establishing the starting date posed significant difficulties in avoiding inadvertent references to the illegal search or the products of that search.[2] Contrary to appellants' assertions, the dismissal of the conspiracy count hinged on an abundance of caution, not a taint running from the 1973 search to the 1974 FBI search. For this reason, Judge Pointer did not err in refusing to grant appellants' motion to dismiss the substantive count.
 
 
 3
 Appellants Pike, Smith, and Lee challenge the sufficiency of the evidence to sustain their convictions. Viewing the evidence in the light most favorable to the United States, we hold that a reasonable jury could conclude that the evidence is inconsistent with the hypothesis of appellants' innocence. See, e. g., United States v. Warner, 5th Cir. 1971, 441 F.2d 821, 825, cert. denied, 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 58. Neither Pike, Smith, nor Lee was present in the apartment raided by the FBI in June, 1974. The key evidence linking these three appellants to the operation of the lottery was the testimony of witness Weatherspoon, a "stationhouse operator" testifying for the United States. She testified that Smith picked up the money from her stationhouse when she was running the lottery and that all wagers at her stationhouse were turned in daily to appellant Lee. Witness Weatherspoon further testified that appellant Pike came to her house "every week or sometimes every two weeks" to draw the winning numbers for the lottery. Coupled with Judge Pointer's cautionary charge to the jury, the accomplice testimony of Weatherspoon was itself sufficient to support the convictions of appellants Pike, Smith, and Lee. See Peel v. United States, 5th Cir. 1963, 316 F.2d 907, cert. denied, Crane v. United States, 375 U.S. 896, 84 S.Ct. 174, 11 L.Ed.2d 125. In addition, however, significant corroborating evidence was before the jury. Appellants' arguments to the sufficiency of the evidence are rejected. This being the case, appellants' jurisdictional arguments are similarly rejected. See United States v. Bridges, 5th Cir. 1974, 493 F.2d 918.
 
 
 4
 Appellant Lee challenges the admission of lottery slips and other gambling paraphernalia seized in two searches of his automobile pursuant to local warrants on October 1, 1974, and October 9, 1974. The United States withdrew the evidence obtained in the second search because that search postdated the indictment returned against appellant. No Rule 41(e) motion to suppress the evidence seized in the two automobile searches was made. However, at the time the United States proposed to introduce the evidence, Judge Pointer allowed appellant to make his objections. Given this sequence of events, the objections made at trial must be regarded as timely.[3] See Newman v. United States, 5th Cir. 1960, 277 F.2d 794, 797. From our independent examination, we conclude that Judge Pointer correctly determined that sufficient factual information was available to the local magistrate to support a finding of probable cause to search appellant's automobile.[4] In addition to information received from a previously reliable informant, see Aquilar v. Texas, supra; United States v. Bell, 5th Cir. 1972, 457 F.2d 1231, the local magistrate was apprised of observations made in the course of an extensive law enforcement surveillance of appellant Lee's activities as a "runner" for the lottery, which included the passing of lottery slips to other members of the gambling operation. Appellant's search and seizure argument thus fails.
 
 
 5
 The Court having given lengthy consideration to all arguments raised in this appeal, the convictions of all appellants should be and are affirmed.
 
 
 
 [1]
 Appellants apparently believe that Judge Pointer dismissed the conspiracy count because the grand jury that indicted appellants improperly considered evidence obtained by the Birmingham police in the illegal 1973 search. As discussed above, however, Judge Pointer's dismissal of the conspiracy count turned on pragmatic considerations. Assuming for the purposes of argument that appellants are attempting a belated attack on the nature of the grand jury proceedings, it is nevertheless true that grand juries are not bound by the same rules of evidence that restrict a trial court and can consider evidence seized in an illegal search. See United States v. Calandra, 1974, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561
 
 
 [2]
 The following comments by Judge Pointer are illustrative
 But in the more traditional manner, that is what we get back into with Count One (the conspiracy count) where I'm not sure we can cure the matter . . . (i) f you're going to get into the facts and events that took place in June or July, 1973, without having a very difficult time separating out what is connected with the raid and what isn't.
 Appendix at 102.
 
 
 [3]
 Appellant Lee subsequently failed to request a limiting instruction with regard to the evidence withdrawn by the United States, and thus waived any objections he might have had to the initial admission of that evidence. Appellant's objections to the evidence seized in the first search of his automobile were, however, properly preserved
 
 
 [4]
 Appellant Lee also challenges the local Birmingham procedure whereby a completed search warrant is presented to the magistrate who then places the submitting officer under oath and conducts an inquiry into the existence or nonexistence of sufficient probable cause to support the particular search. The more typical procedure involves the submission of a sworn affidavit. The real difference in a probable cause evaluation made on the basis of factual matters set out in an affidavit or in a completed search warrant is difficult to see. As long as the magistrate does conduct a meaningfully independent inquiry before affixing his signature, the constitutional standards should be regarded as met. In all events, the magistrate's "determination of probable cause should be paid great deference by reviewing courts," Spinelli v. United States, 1969, 393 U.S. 410, 419, 89 S.Ct. 584, 591, 21 L.Ed.2d 637; United States v. Hill, 5th Cir. 1974, 500 F.2d 315, 319, and in the absence of arbitrariness, that determination is conclusive. Bastida v. Henderson, 5th Cir. 1973, 487 F.2d 860, 863, citing Castle v. United States, 5th Cir. 1961, 287 F.2d 657