**WEST POINT–PEPPERELL, INC.,**
**Plaintiff-Appellee,**

v.

**Raymond J. DONOVAN, Secretary of Labor, U. S. Department of Labor, et al., Defendants-Appellants.**

**No. 80–7898.**

United States Court of Appeals,
Eleventh Circuit.

Oct. 21, 1982.

---

Lawrence E. Gill, Atlanta, Ga., Charles I. Hedden, Allen H. Feldman, Andrea C. Casson, U. S. Dept. of Labor, Washington, D. C., for defendants-appellants.

Costangy, Brooks & Smith, Charles A. Edwards, Atlanta, Ga., for plaintiff-appellee.

Before RONEY and KRAVITCH, Circuit Judges, and PITTMAN *, District Judge.

* Honorable Virgil Pittman, U. S. District Judge for the Southern District of Alabama, sitting by designation.

1. The district court in its order issuing the preliminary injunction also quashed the warrant. Thus, it appears as if the district court has decided the merits of this case and has provided appellee with the full relief requested. Nevertheless, because the court issued only a preliminary injunction and the appeal comes to us as an interlocutory appeal, we review the district court's decision as one granting only preliminary relief.

2. The petition signed by over 300 WPP employees stated:

"We the textile workers of West Point Pepperell feel our rights have been violated by OSHA in regards to their recent dust standard requirements.

**KRAVITCH, Circuit Judge:**

This is an interlocutory appeal under 28 U.S.C. § 1292(a)(1) from the grant of a preliminary injunction by the district court staying the execution of an OSHA inspection warrant issued by a duly authorized magistrate.[1] After conducting an evidentiary hearing the district court issued the injunction primarily on the basis that the warrant was not supported by probable cause. The court also found that the warrant was overly broad. We agree with appellant that the district court erred in both conclusions.

**I.**

Appellee, West Point-Pepperell, Inc. (WPP), operates a cotton mill at Lindale, Georgia. Pursuant to OSHA regulations, WPP instituted a program requiring employees to wear respirators when working in areas of the mill in which cotton dust exceeded permissible exposure levels. In response to the program, WPP employees sent a petition and numerous letters to OSHA and others, complaining about the OSHA's cotton dust and respirator regulations and insisting that employees informed of the hazards of cotton dust should be required to wear respirators only on a voluntary basis. At least one of the letters received by OSHA stated that use of the respirators was causing physical ailments such as nausea, headaches, dizziness, and fainting.[2] Pursuant to the agency's inter-

Each employee below is aware of the danger in cotton dust in regards to a disease called byssinosis (*brown lung*).

However we the employees still feel the dust mask should be kept on a *voluntary basis.*"

The employee letter appended to the warrant application stated:

May 5, 1980
President Jimmy Carter
The White House
Washington, D. C.
EMERGENCY!!!
Dear Mr. President:

I am writing about the dust masks that OSHA is requiring us to wear at West Point Pepperell's Lindale Mills, Lindale, Georgia. We cannot tolerate them!

People are having to be taken out on stretchers and revived with oxygen. The masks are causing headaches, nausea, dizzi-

nal complaint verification procedures,[3] OSHA conducted off-site interviews of 57 employees who had signed either the petition or letters. The interviews allegedly revealed that the employees disliked wearing the respirators, that seven interviewees had fainted as a result of such use, and that several complained that the respirators made breathing difficult, caused chest pain and dizziness, and interfered with their vision. Moreover, the interviews indicated that the employees were not aware of having been medically examined to determine their physical ability to wear respirators.

Based upon this information, the agency decided that there were reasonable grounds to suspect violations of OSHA's respirator and cotton dust standards, and on July 8, 1980, attempted to conduct an inspection of the mill. OSHA compliance officers held an opening conference with WPP representatives and walked through the plant to orient themselves with its layout. During that time, two agency physicians conducted interviews of 13 WPP employees and learned that workers received little or no instruction on the adverse health effects of cotton dust. A few had seen a company-produced film on cotton dust hazards, but in almost all cases, the employees had not had personal discussions with company officials on the subject. Moreover, the interviews also revealed that most workers received no medical evaluation prior to their being given respirators; that many employees experienced symptoms of fainting, dizziness, blackouts, "phobia," nervousness, shortness of breath, breathing difficulty, chest pains, nausea, and blurriness of vision; that al-

though 24 employees reported to the clinic with these symptoms, none were medically examined; that the company made no evaluation of fit when the respirators were issued, although a few employees received instructions on how to insure a proper fit; and that an employee whose own physician determined him unsuited to wear a respirator was transferred to another department in the mill but with a severe cut in pay.

After the interviews were completed and the compliance officers returned from their general walk-around, the company refused to permit OSHA to continue with its inspection. The following week representatives of both parties met to review the attempted inspection. The company's respirator program was discussed and its training film viewed. Moreover, WPP identified fourteen areas of the mill that its monitoring indicated were above permissible cotton dust exposure levels and admitted that the use of respirators was required in those areas. WPP had hoped that the information provided at the meeting would be sufficient to evaluate the employee complaints, obviating the need for an inspection. The company continued to refuse OSHA permission to inspect the mill.

On July 28, 1980, OSHA applied to a federal magistrate for an administrative warrant for inspection of WPP's Lindale facility. Based upon the 70 employee interviews, OSHA averred that seven specific violations of OSHA cotton dust and respirator regulations may exist or have existed at the Lindale mill.[4] The application also stat-

ness, heat rash on our face and neck, also in the way of our glasses and therefore affects our ability to run our jobs. We cannot get enough oxygen through them. We have tried them for a week and it gets worse instead of better.

We think it should be optional whether we wear them or not.

Something *must* be done about this; we are losing good help because they cannot wear these masks.

Signed:

P.S. If you don't do something about this *you will not* get my vote.

3. *See* OSHA Instruction CPL 2.12 A, CCH Empl. Safety & Health Guide ¶ 11, 743; Chapter VI of the Field Operations Manual, CCH Empl. Safety & Health Guide ¶ 4340.1–4340.5. These operational guidelines establish procedures for investigation of complaints concerning alleged unsafe and unhealthful conditions at the workplace, regardless of the formality of the complaints.

4. OSHA asserted that the following violations exist or may have existed at the mill:
(1) The employer has failed and/or fails to assure proper respirator fit, a possible violation of the Act and the safety and health regulations promulgated pursuant thereto at

ed that the requested inspection differed from prior OSHA inspections of the mill because it was based upon the respirator and new cotton dust standards, rather than the old cotton dust standards. In support of the application, OSHA provided the magistrate with a copy of the employee petition, an employee letter representative of those received by the agency, and the relevant OSHA regulations. The magistrate granted the warrant, limiting it in scope to "as much of the workplace as is reasonably necessary" to investigate compliance with respirator and cotton dust standards. The warrant specifically designated 10 areas of the mill in which OSHA could place air sampling devices (vertical elutriators) for the testing of cotton dust levels.

The next day, and before the warrant was executed, WPP brought this action in federal district court, seeking to enjoin the execution of and quash the warrant. It alleged that the inspection and warrant were contrary to OSHA's internal operating procedures which preclude fol-

low-up inspections when a citation is under contest,[5] that there was no probable cause to support the issuance of the warrant, that OSHA regulations do not permit *ex parte* warrants, and that the WPP would suffer irreparable harm if the agency were allowed to conduct its inspection. On August 4, 1980, the district court granted a 15-day temporary restraining order and ordered the Secretary of Labor to show cause why a preliminary injunction should not issue. A hearing on the preliminary injunction was held on August 19 and 22, 1980. Finding that the warrant was issued in the absence of probable cause, the district court granted a preliminary injunction and quashed the warrant. The court also addressed several other issues, including the scope of the warrant, which it found to be overly broad.[6]

## II.

A. Standard of Reviewing the Issuance of the Preliminary Injunction

We begin by observing that the grant or denial of a preliminary injunction

29 CFR 1910.134(e)(5)(i) and 1910.-1043(f)(4)(i);

(2) The employer has failed to evaluate individual employee's physical ability to wear respirators prior to their inspection and use —29 CFR 1910.134(b)(10).

(3) The employer has failed to adequately medically evaluate employee's complaints about respirators—Section 5(a)(1) of the Act.

(4) The employer has failed to transfer workers to low dust areas without any cut in pay, where said workers were or are unable to wear any type of respirator, 29 CFR 1910.-134(b)(10); 1910.1043(f)(2)(v).

(5) The employer has failed to inform workers about cotton dust hazards including byssinosis—29 CFR 1910.1043(i)(1)(d).

(6) The employer has failed to inform workers of their pulmonary function test results and other pertinent medical data—Section 5(a)(1) of the Act.

(7) The employer may have failed to enforce the use of the proper respirator for certain areas within the mill—29 CFR 1910.-134(b)(11)(c) and 29 CFR 1910.1043(f)(2)(i) Table 1.

5. At the time the warrant was issued, WPP was contesting a 1977 OSHA citation, alleging violations of 29 C.F.R. § 1910.134(a)(1) and 29 C.F.R. § 1910.1000(a)(2) and (e) (the old cotton dust standard) for failure to introduce engineering controls to reduce exposure to cotton dust. Appellee argues that the attempted inspection

in this case constitutes a follow-up inspection prohibited by OSHA's Field Operations Manual, Chapter V(f). We disagree because the proposed inspection involves the investigation of different working conditions and compliance with different standards than those underlying the 1977 citation. *See Simmons, Inc.*, 1977–78 CCH Occup. Safety & Health Dec. ¶ 22, 387 (Rev. Comm'n. 1977).

6. The district court also considered whether Labor Department attorneys are authorized to obtain OSHA inspection warrants and whether such warrants may be obtained *ex parte* pursuant to OSHA regulation 29 C.F.R. § 1903.4. Both issues were resolved in favor of appellant. Appellee has raised neither of these issues on appeal. Although it does mention the *ex parte* warrant issue in a footnote in its brief, appellee expressly waived this issue at oral argument as a basis for relief. It should be noted, however, that since the district court's decision, the former Fifth Circuit has interpreted 29 C.F.R. § 1903.4, as written when the warrant in this case was issued, as not permitting the Secretary of Labor to obtain OSHA inspection warrants *ex parte*. *Donovan v. Huffines Steel Co.*, 645 F.2d 288 (5th Cir. 1981). In response to decisions such as *Huffines,* the Secretary amended 29 C.F.R. § 1903.4 to specifically authorize the procurement of *ex parte* warrants. *See* 29 C.F.R. § 1903.4(d).

rests in the sound discretion of the district court. The court's discretion, however, is not unbridled. "It must exercise that discretion in light of what we have termed 'the four prerequisites for the extraordinary relief of preliminary injunction.'" *Canal Authority of the State of Florida v. Callaway,* 489 F.2d 567, 572 (5th Cir. 1974) (citing *Allison v. Froehlke,* 470 F.2d 1123, 1126 (5th Cir. 1972)). The four prerequisites are 1) a substantial likelihood that the movant will prevail on the merits; 2) a substantial threat that the movant will suffer irreparable injury if the injunction is not granted; 3) that the threatened injury to the movant outweighs the threatened harm an injunction may cause the opponent; and 4) that granting the preliminary injunction will not disserve the public interest. *Southern Monorail Co. v. Robbins & Myers, Inc.,* 666 F.2d 185 (5th Cir. 1982); *Canal Authority of State of Florida v. Callaway, supra,* 489 F.2d at 572. A preliminary injunction may issue only if the movant carries the burden of persuasion as to all four prerequisites. *Id.* Here, the district court concluded that

the appellee met its burden of persuasion by establishing that the agency lacked probable cause to obtain the warrant.[7] OSHA contends that the district court erred in finding no probable cause, and urges us to find that the court abused its discretion in granting the preliminary injunction.

## B. The Finding of Probable Cause

■ The Secretary of Labor is authorized by Section 8 of the Occupational Safety and Health Act of 1970 [the Act], 29 U.S.C. § 657, to conduct health and safety inspections of workplaces within the Act's jurisdiction. Section 8(a) clothes the Secretary with the general power to enter and inspect workplaces in order to carry out the purposes of the Act;[8] section 8(f)(1) specifically requires the Secretary to conduct a "special inspection" as soon as practicable whenever the Secretary receives a written employee complaint that leads the Secretary reasonably to believe that a violation exists at the workplace.[9] Neither provision ex-

---

7. The district court held that the first, second, and fourth prerequisites described above:

> have expressly been determined in plaintiffs' favor in performing the balancing test for probable cause of *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978). As to irreparable harm, the possibility of an administrative entry in violation of the Fourth Amendment is, alone, potential harm enough to justify granting an injunction. *Maney v. Ratcliff,* 399 F.Supp. 760 (E.D.Wis.1975); *Illinois Migrant Council v. Pilliod,* 398 F.Supp. 882 (N.D.Ill.1975). Even if the specter of an unreasonable search is not serious and noncompensable enough to warrant injunction, *see 227 Book Center, Inc. v. Codd,* 381 F.Supp. 1111 (S.D.N.Y.1974), there is still ample evidence in the present case to justify this court's exercise of its Rule 65 powers. The installation of OSHA's vertical elutriators, which rest on stands and must necessarily cause some blockage of the narrow aisles between machines in the Lindale plant, would burden employer and employees considerably more than the devices already utilized by West Point Pepperell, which are wall-mounted and out of the way of employee traffic. Furthermore, mill employees—who are paid on a piecework basis—would be removed from their tasks during work hours, with concomitant monetary losses to them and to the mill. These burdens would not be enough to prevent the

issuance of a warrant were probable cause present, but in the absence of such justification for the invasion it is sufficient to warrant an injunction.

*West Point-Pepperell v. Marshall,* 496 F.Supp. 1178 (N.D.Ga.1980).

8. Section 8(a), 29 U.S.C. § 657(a) provides:

> (a) In order to carry out the purposes of this chapter, the Secretary, upon presenting appropriate credentials to the owner, operator, or agent in charge, is authorized—
> (1) to enter without delay and at reasonable times any factory, plant, establishment, construction site, or other area, workplace or environment where work is performed by an employee of an employer; and
> (2) to inspect and investigate during regular working hours and at other reasonable times, and within reasonable limits and in a reasonable manner, any such place of employment and all pertinent conditions, structures, machines, apparatus, devices, equipment, and materials therein, and to question privately any such employer, owner, operator, agent or employee.

9. Section 8(f)(1), 29 U.S.C. § 657(f)(1), provides:

> (f)(1) Any employees or representative of employees who believe that a violation of a safety or health standard exists that threat-

pressly states that the Secretary must secure a warrant before conducting a search. The Supreme Court, however, in addressing the propriety of warrantless nonconsensual searches under section 8(a) has held that the Fourth Amendment requires that an administrative search warrant be obtained prior to such inspections. *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978). Similarly, the Secretary must procure a warrant before·conducting a nonconsensual search under section 8(f)(1). *Marshall v. Horn Seed Co.,* 647 F.2d 96, 99 (10th Cir. 1981). *See Marshall v. Barlow's, Inc., supra,* 436 U.S. at 320 & n.16, 98 S.Ct. at 1824 & n.16.

■ To obtain an OSHA inspection warrant, the Secretary need not show probable cause in the criminal sense. *Marshall v. Barlow's, Inc., supra,* 436 U.S. at 320–21, 98 S.Ct. at 1824–25. Instead, the Secretary need only establish administrative probable cause, which is tested by a standard of reasonableness, requiring the magistrate or judge to "balance the need to search against the invasion in which the search entails." *Camara v. Municipal Court,* 387 U.S. 523, 537, 87 S.Ct. 1727, 1735, 18 L.Ed.2d 930 (1967). In *Barlow's,* the Supreme Court observed that administrative probable cause justifying the issuance of an OSHA inspection warrant may be based either on 1) specific evidence of an existing violation; or 2) "a showing that 'reasonable legislative or administrative standards for conducting

an ... inspection are satisfied with respect to a particular [establishment].' *Camara v. Municipal Court,* 387 U.S. at 538 [87 S.Ct. at 1736]." *Marshall v. Barlow's, Inc., supra,* 436 U.S. at 320–21, 98 S.Ct. at 1824–25. *See United States v. Mississippi Power & Light Co.,* 638 F.2d 899 (5th Cir. 1981). Either showing is sufficient to insure that "the decision to enter and inspect ... [is not] the product of the unreviewed discretion of the enforcement officer in the field." *See v. City of Seattle,* 387 U.S. 541, 545, 87 S.Ct. 1737, 1740, 18 L.Ed.2d 943 (1967). *See, e.g., Marshall v. Barlow's, Inc., supra,* 436 U.S. at 323, 98 S.Ct. at 1826; *Burkart Randall Div. of Textron, Inc. v. Marshall,* 625 F.2d 1313, 1325 (7th Cir. 1980).[10]

■ The warrant application in this case was based upon "specific evidence of an existing violation." Although the Supreme Court in *Barlow's* made clear that a warrant could issue upon such a showing, it did not specify the quantum of specific evidence that must be presented to establish the reasonableness of an inspection. However, two considerations that underlie the reasonableness standard provide guidance for fashioning a proper test. The first is that administrative searches involve less of an intrusion on privacy than criminal searches. *See Marshall v. Barlow's, Inc., supra,* 436 U.S. at 320–21, 98 S.Ct. at 1824–25; *Camara v. Municipal Court, supra,* 387 U.S. at 537–39, 87 S.Ct. at 1735–36; Note,

ens physical harm, or that an imminent danger exists, may request an inspection by giving notice to the Secretary or his authorized representative of such violation or danger. Any such notice shall be reduced to writing, shall set forth with reasonable particularity the grounds for the notice, and shall be signed by the employees or representative of employees, and a copy shall be provided the employer or his agent no later than at the time of inspection, except that, upon the request of the person giving such notice, his name and the names of individual employees referred to therein shall not appear in such copy or on any record published, released, or made available pursuant to subsection (g) of this section. If upon receipt of such notification the Secretary determines there are reasonable grounds to believe that such violation or danger exists, he shall make a special

inspection in accordance with the provisions of this section as soon as practicable, to determine if such violation or danger exists. If the Secretary determines there are no reasonable grounds to believe that a violation or danger exists he shall notify the employees or representative of the employees in writing of such determination.

10. The interposition of a neutral magistrate between inspectors and employers also "provides assurances to employers that the inspection is authorized by statute, is permissible under the Constitution, and will be conducted at a reasonable time and in a reasonable manner." *Burkart Randall Div. of Textron, Inc. v. Marshall, supra,* 625 F.2d at 1325. *See Marshall v. Barlow's, Inc., supra,* 436 U.S. at 323, 98 S.Ct. at 1826.

*Rationalizing Administrative Searches,* 77 Mich.L.Rev. 1291 (1979); Note, *Camara, See, and Their Progeny: Another Look at Administrative Inspections Under The Fourth Amendment,* 15 Colum.J. of Law and Soc.Prob. 61 (1979). Accordingly, administrative search warrants may be obtained upon a lesser showing of probable cause than is required for criminal search warrants, for which the affiant need show "the probability, and not a prima facie showing, of criminal activity." *United States v. Melancon,* 462 F.2d 82, 89 (5th Cir.), *cert. denied,* 409 U.S. 1038, 93 S.Ct. 516, 34 L.Ed.2d 487 (1972). *See Beck v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). The second consideration is that a showing of administrative probable cause must satisfy the basic purpose of the Fourth Amendment, which is "to safeguard the privacy and security of individuals against arbitrary invasions by government officials." *Marshall v. Barlow's, Inc., supra,* 436 U.S. at 312, 98 S.Ct. at 1820 (citing *Camara v. Municipal Court, supra,* 387 U.S. at 528, 87 S.Ct. at 1730). In the context of administrative searches, this principle requires that persons not be subject to the unbridled discretion of "executive and administrative officers, particularly those in the field, as to when to search and whom to search." *Id.,* 436 U.S. at 323, 98 S.Ct. at 1826. Hence, the evidence of a specific violation required to establish administrative probable cause, while less than that needed to show a probability of a violation, must at least show that the proposed inspection is based upon a reasonable belief that a violation has been or is being committed and not upon a desire to harass the target of the inspection. This requirement is met by a showing of specific evidence sufficient to support a reasonable suspicion of a violation. *Cf. Marshall v. Horn Seed Co., supra,* 647 F.2d at 102 (warrant application grounded on specific evidence of violations must reveal "some plausible basis for believing that a violation is *likely* to be found").

Here, the warrant application unquestionably contained sufficient specific evidence of a violation to support a finding of probable cause. The sworn application was based on an employee petition and several employee letters, indicating problems with the respirator program at the Lindale mill, as well as fifty-seven off-site and thirteen on-site employee interviews. The application summarized the information gained from the interviews and listed seven specific violations of OSHA respirator standards, which the agency believed were in existence or existed within the prior six months at the Lindale mill. Accompanying the warrant application were copies of the employee petition, an employee letter, and the relevant OSHA regulations. This evidence contained in the warrant application was more than sufficient to support a reasonable suspicion of violations of OSHA standards at the Lindale mill, satisfying the probable cause requirement for the issuance of the warrant.

In reviewing the magistrate's determination of probable cause the district court did not rely solely on the information presented to the magistrate. Instead, at the preliminary injunction hearing and over appellant's objections, the court permitted appellee to cross-examine the affiant of the warrant application and to introduce other witnesses and evidence not before the magistrate. On the basis of the warrant application and the additional evidence adduced at the hearing, the court concluded that there was no probable cause to believe that WPP was or had been in violation of effective OSHA regulations.

Appellant contends that in reaching its conclusion, the district court failed to follow established principles for reviewing a magistrate's finding of probable cause. It argues that the court erred by conducting an evidentiary hearing on probable cause, by failing to properly limit the hearing, and by improperly considering and relying on evidence not presented to the magistrate. We agree with each of appellant's contentions but rest our holding that the court committed reversible error on the ground that the court improperly considered and relied upon extraneous evidence in overturning the magistrate's finding of probable cause.

The standards for reviewing a magistrate's finding of probable cause are the same for both administrative and criminal warrants. *See, e.g., Burkart Randall Div. of Textron, Inc. v. Marshall, supra,* 625 F.2d at 1319. In passing on the validity of a warrant, the role of the reviewing court is limited. A magistrate's probable cause determination is entitled great deference, *Spinelli v. United States,* 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969), and is conclusive in the absence of arbitrariness. *United States v. Green,* 634 F.2d 222, 225 (5th Cir. 1981); *United States v. Pike,* 523 F.2d 734, 737 n.4 (5th Cir. 1975), *cert. denied,* 426 U.S. 906, 96 S.Ct. 2226, 48 L.Ed.2d 830 (1976); *Bastida v. Henderson,* 487 F.2d 860, 863 (5th Cir. 1973). Moreover, judicial review of the sufficiency of an affidavit for the issuance of a warrant must be strictly confined to the information brought to the magistrate's attention. *E.g., Aguilar v. Texas,* 378 U.S. 108, 109 n.1, 84 S.Ct. 1509, 1511 n.1, 12 L.Ed.2d 723 (1964); *United States v. Melancon, supra,* 462 F.2d at 89–90. Except in those situations discussed below, a reviewing court should not conduct a probable cause hearing in which it considers evidence not presented to the magistrate.

Upon a proper showing by a party challenging the warrant, a court may be compelled to hold an evidentiary hearing on the truthfulness of the facts presented to the magistrate. *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Such a hearing is for the limited purpose of allowing the challenging party to prove by a preponderance of the evidence that the warrant application contains false statements or material omissions that were made deliberately or with reckless disregard for the truth. *Id.; United States v. Martin,* 615 F.2d 318, 328 (5th Cir. 1980); *United States v. Astroff,* 578 F.2d 133 (5th Cir. 1978) (en banc). Negligent misrepresentations or negligent omissions will not undermine the affidavit. *Franks v. Delaware, supra,* 438 U.S. at 171, 98 S.Ct. at 2684; *United States v. Martin, supra,* 615 F.2d at 329. If the challenger carries his burden of proof, the court must reform the warrant application by setting aside the misstatements or by including the omissions, and then determine whether the reformed application nonetheless establishes probable cause. *See Franks v. Delaware, supra,* 438 U.S. at 154, 98 S.Ct. at 2675; *United States v. Martin, supra,* 615 F.2d at 328.

The district court in this case ignored these principles. First, the district court did not require the appellee to make the requisite preliminary showing before conducting an evidentiary hearing on probable cause. In *Franks v. Delaware, supra,* the Supreme Court explained that in order to be entitled to an evidentiary hearing

> the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.

438 U.S. at 171, 98 S.Ct. at 2684. Appellee asserts that it made an adequate preliminary showing by alleging in its opening statement at the August 19, 1980 hearing that the Government has "perhaps not acted in good faith in its representations to the Magistrate" and by emphasizing throughout its presentation of evidence and argument to the court that the warrant application was so misleading that the magistrate could not have made an informed judgment. This showing falls far short of that required by *Franks.* In its application for injunctive relief appellee did not allege that the warrant application contained specific false statements or omissions made *deliberately* or *with reckless disregard for the*

*truth;* nor did it make the requisite offer of proof. Rather the attack was merely conclusory. Appellee therefore was not entitled to a *Franks* hearing. *See United States v. Jeffers,* 621 F.2d 221, 227 (5th Cir. 1980); *United States v. Scott,* 555 F.2d 522, 528 (5th Cir.), *cert. denied,* 434 U.S. 985, 98 S.Ct. 610, 54 L.Ed.2d 478 (1977). In the interest of avoiding undue delay in the enforcement of properly issued OSHA warrants, *see, e.g., Marshall v. Shellcast Corp.,* 592 F.2d 1369 (5th Cir. 1979), the district court should not have gratuitously conducted the hearing. The fact that it did so, however, does not alone constitute reversible error.

In addition to failing to require appellee to make the proper preliminary showing, the district court also refused to limit the evidentiary hearing to whether or not the warrant application contained misstatements or material omissions made intentionally or with reckless disregard for the truth. Instead the court permitted the appellee to present evidence "as to what was given to the Secretary . . . immediately before the warrant, bearing on the subject of the warrant . . . ." The court erred by failing properly to focus the evidentiary hearing, but again we cannot say that the admission of extraneous evidence alone warrants reversal. Reversible error arises where the reviewing court actually considers and relies upon evidence not properly before it in overturning a magistrate's finding of probable cause. We therefore turn to this issue.

In reviewing the magistrate's finding of probable cause, the district court did not follow the procedure enunciated in *Franks.* To reiterate, once a reviewing court has conducted a hearing, it should 1) determine whether or not the challenger

has carried its burden of proving that the warrant application contains deliberate or reckless misstatements or omissions, 2) reform the warrant application accordingly, and 3) decide whether or not the reformed application nonetheless supports the magistrate's finding of probable cause.[11] Here the district court considered each of the violations asserted in the warrant application in light of all of the evidence introduced at the probable cause hearing, even though there was no showing that the affiant deliberately or recklessly included misstatements or material omissions in the warrant application. With respect to most of the violations, the court found as a matter of fact that WPP was not in violation of the particular regulation. According to the court,

> [t]he evidence revealed that West Point Pepperell has instituted a comprehensive respirator program, including a medical program to evaluate employees' ability to wear respirators and to handle physical and psychological complaints stemming from the required wearing of respirators. It was also apparent that the Lindale mill does not discriminate against employees who are unable to wear respirators, and that it has tried to thoroughly educate its workers on the dangers of cotton dust. The employees' petition to the government indicated at least some familiarity with the disease of byssinosis.

*West Point-Pepperell, Inc. v. Marshall, supra,* at 1183–84. In other words, the court assessed the merits of the violations asserted by the agency, weighing the evidence contained in the warrant application against that introduced by appellee, seemingly requiring appellant to make a prima facie showing of a violation in order to establish probable cause.[12] Instead, the

---

**11.** Judge Roney, by special concurrence, labels as *dictum* our discussion of the standard for admitting additional evidence in a pre-search warrant proceeding. We disagree. The court below held an evidentiary hearing, and both parties briefed the question of the proper standard for admitting additional evidence in that hearing. Appellee specifically contended that the *Franks* standard was met. Thus the issue

was squarely presented, and essential to our determination of the scope of the district court hearing.

**12.** Appellee asserts that the district court did not require appellant to demonstrate a prima facie showing of a violation, but rather undertook an analysis that attempted to balance "the need to search against the invasion which the search entails." *Camara v. Municipal Court,*

court should have considered only that evidence presented to the magistrate in order to determine whether the magistrate's finding of probable cause was arbitrary. *See United States v. Green, supra; Bastida v. Henderson, supra.* As we have already observed, the warrant application contained more than enough evidence to support a finding of probable cause with respect to these violations.

The district court dismissed two other alleged violations on the ground that the OSHA regulations assertedly violated were inapplicable to appellee. First, the court dismissed the allegation that WPP may have failed to inform workers of certain medical test results in violation of section 5(a)(1) of the Act, 29 U.S.C. § 654(a)(1). The court concluded that providing workers with such information is not a requirement under the Act or its implementing regulations. Second, the court determined that WPP was not at that time subject to the OSHA respirator regulation requiring the use of proper respirators in work areas with excessive levels of cotton dust. 29 C.F.R. § 1910.1043(f)(2)(i). The regulation was to have become effective on April 27, 1980, but OSHA officially announced that the standard would not apply to a particular employer until initial monitoring of cotton dust levels by the employer was completed or September 27, 1980, whichever occurred first. Appellee, according to the court, had not yet completed its initial monitoring. The court therefore concluded that "even assuming the existence of uncontrovertible

evidence that employees were not being required to wear proper respirators, West Point-Pepperell could not have been in violation of standards not yet in effect." *West Point-Pepperell, Inc. v. Marshall, supra,* at 1184.

 As a general matter, a probable cause hearing is not the appropriate forum for a determination of the applicability of a statute or regulation to a particular situation. Such a determination is best reserved for hearings on the merits of an alleged violation. However, where the party challenging a warrant makes a *Franks* showing that the affiant knowingly or recklessly asserted the violation of an inapplicable statute or regulation with the intent to deceive the magistrate, the reviewing court should strike the alleged violation as a basis for the warrant. Here, appellee did not make a *Franks* showing with respect to either of the alleged violations struck by the district court. WPP introduced no evidence showing that the affiant deliberately alleged these violations with the intent to deceive the magistrate. Nor can it be said that the averments constituted reckless disregard for the truth. Although we do not here decide whether or not at the time the warrant was issued section 5(a)(1) required employers such as WPP to inform workers of their pulmonary function test results or other pertinent medical data, we do observe that the resolution of that issue was by no means clear.[13] As to the allegation that

---

*supra,* 387 U.S. at 537, 87 S.Ct. at 1735. Both the appellee and the district court have confused the role of a court or magistrate in issuing a warrant and the role of a court in reviewing the issuance of a warrant. As discussed above, the reviewing court's role is limited to determining whether in light of the evidence presented to the magistrate, the magistrate's finding of probable cause was arbitrary. *See, e.g., United States v. Green, supra,* 634 F.2d at 225; *Bastida v. Henderson, supra,* 487 F.2d at 863. The reviewing court is not free to consider evidence not before the magistrate, except in those circumstances required by *Franks v. Delaware;* nor is it permitted to "balance" the evidence without placing great deference on the side of the magistrate's determination. *See Spinelli v. United States, supra,* 393 U.S. at 419, 89 S.Ct. at 590.

**13.** Appellee argues that the allegations that it may have violated section 5(a)(1) by failing to inform employees of pertinent medical data and by failing to adequately medically evaluate employee complaints about the respirators are improper because OSHA had already promulgated a specific regulation covering the alleged violations. 29 C.F.R. § 1910.1043(k)(2). Although 29 C.F.R. § 1910.1043(k)(2) did not become effective until March 27, 1981, appellee asserts that it nevertheless preempted section 5(a)(1) as of the date it was promulgated. OSHA regulation 29 C.F.R. § 1910.5(f) states that "[a]n employer who is in compliance with any standard in this part shall be deemed to be in compliance with the requirement of section 5(a)(1) of the Act, but only to the extent of the condition, practice, means, methods, operation, or process covered by the standard." We do

WPP may have failed to enforce the use of proper respirators, we note that in the warrant application, appellant averred that "upon information and belief, it appears that the company has conducted its own initial monitoring for cotton dust exposure pursuant to 29 C.F.R. § 1910.1043(a)(2) and has found cotton dust levels in excess of permissible exposure limits in many areas of the mill." [14] Appellee did not make any showing that this averment was a deliberate or reckless misstatement. Rather, the record reveals that WPP had completed its initial monitoring prior to the issuance of the warrant. In its memorandum in support of its motion for a temporary restraining order and to quash, appellee admitted that "[s]ince West Point Pepperell has already completed initial monitoring at its Lindale mill, certain of its employees are presently required to use respirators in accordance with 29 C.F.R. § 1910.1043(f)(vi)." Contrary to the district court's finding, the record supports the averment that the respirator regulation was applicable to appellee. Thus, the magistrate cannot be said to have erred in issuing the warrant on the basis of alleged violations of either the respirator regulation or section 5(a)(1).

In light of the foregoing, we conclude the district court erred in finding the warrant unsupported by probable cause. Because the preliminary injunction was premised on the court's probable cause determination, we hold that the district court abused its discretion in issuing the preliminary injunction and accordingly vacate the injunction.

C. Scope of the Warrant

■ The district court not only preliminarily enjoined the enforcement of the warrant on the ground that it was unsupported by probable cause, but also held that the warrant was overly broad. It determined that although the warrant did not authorize a wall-to-wall inspection, the warrant was broader than reasonable because it authorized the testing of cotton dust levels in two areas of the mill in which respirators were not worn and because it permitted the agency access to certain medical records which were not required by OSHA regulations. Appellant argues that the district court's determination was erroneous because the scope of the warrant bears a reasonable relationship to the violations alleged in the employee complaints.

This circuit has never addressed the proper scope of an inspection authorized by a warrant issued on the basis of employee complaints or other specific evidence of a violation. Those circuits that have considered the issue are in disagreement. The Seventh Circuit has held that where probable cause to conduct an OSHA inspection is established on the basis of an employee complaint, the inspection need not be limited in scope to the substance of the complaint. *Burkart Randall Div. of Textron, Inc. v. Marshall, supra,* 625 F.2d at 1325. *See, e.g.,* 29 C.F.R. § 1903.11; *In re Inspection of Marsan Co.,* 7 OSHC (BNA) 1557, 1559 (N.D.Ind.1979). In contrast, the Third Circuit has held that where an OSHA inspection is conducted pursuant to an employee complaint, "the scope of the inspection must bear an appropriate relationship to the violations alleged in the complaint." *Marshall v. North American Car Co.,* 626 F.2d 320 (3d Cir. 1980). *See, e.g., In re Inspection of: Central Mine Equipment Co.,* 608 F.2d 719, 7 OSHC (BNA) 1907 (8th Cir.

---

not decide whether section 5(a)(1) is preempted by a specific regulation that has been promulgated but is not yet effective; we only note that appellee in neither the district court nor this court has carried its burden of showing that this issue has been clearly resolved and that affiant acted in reckless disregard for the truth by alleging this violation as a basis for the warrant.

14. The warrant application went on to state that "[i]n order for the agency to determine the particular levels of cotton dust exposure, and

the proper responsive respirator and work practice programs it is necessary for OSHA to be permitted to conduct its own, independent air sampling by means of vertical elutriator." Appellee argues that since it admitted that it was not in compliance with permissible cotton dust exposure levels, the agency did not need to conduct its own independent air sampling. We disagree. If the agency has probable cause to believe a violation exists, it is under no obligation to accept the representations of an employer as to the conditions in the workplace.

1979); *Marshall v. Trinity Industries, Inc.,* 7 OSHC (BNA) 1851, 1854 (W.D.Okl.1979). We need not resolve this issue here because the scope of the inspection authorized by the warrant bears a reasonable relationship to the employee complaints.

. The warrant does not authorize OSHA to conduct a wall-to-wall inspection of the Lindale mill. It limits the scope of the inspection not only by the requirement that the inspection be conducted in a reasonable manner and at reasonable times, but also in terms of the types of records and documents that may be inspected and the permissible areas that may be tested by vertical elutriators. The district court nevertheless found the warrant to be overly broad on two grounds. First, it read the warrant as permitting the Secretary to inspect medical records that the Act did not require WPP to keep. The court did not specify the medical records to which it was referring. If the court held the warrant to be overly broad because the warrant permitted OSHA to inspect medical records regarding violations of section 5(a)(1), which the court improperly found inapplicable to WPP, then the court erred because, as we have already determined, those alleged violations served as a proper basis for the issuance of the warrant. *See* text and note 12 *supra.* Moreover, the warrant explicitly limits the records that the Secretary may examine to those required to be maintained by the Act and regulations. Second, the court concluded that the warrant was overly broad because it permitted testing of cotton dust levels in two areas of the Lindale mill in which WPP did not require its employees to wear respirators. The warrant does not authorize the Secretary to conduct air sampling throughout the Lindale mill; rather it confines testing to ten specific areas. In eight of the areas, appellee requires its employees to wear respirators in accordance with OSHA regulations. In the other two areas, the slashing and weaving rooms, appellee does not require the use of respirators because it determined that cotton dust levels are not sufficiently high to necessitate respirator use. It is not denied, however, that these areas generate cotton dust.

Testing in these areas is therefore reasonably related to the employee complaints and interviews giving rise to OSHA's belief that WPP is not in compliance with the respirator and new cotton dust standards delineated in the warrant application. We therefore reverse the district court's holding that the warrant is overly broad.

For the reasons discussed above, we vacate the preliminary injunction, reinstate the warrant, and remand for proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

RONEY, Circuit Judge, specially concurring:

I concur in all of Judge Kravitch's opinion in this case except to the extent that the entire body of law announced in *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), and its progeny, is mechanically applied to the judicial consideration of warrants prior to an administrative search. It seems to me the considerations involved in an attack on an *ex parte* warrant prior to an administrative search differ from those involved in the attempted suppression in a criminal case of incriminating evidence obtained with a duly authorized search warrant. Judge Kravitch relies almost wholly on post-search cases in suggesting the district court, in a pre-search case, can take additional evidence to prove false statements or material omissions in a warrant application *only* if they are "made deliberately or with reckless disregard for the truth." Since it is not necessary to do so in this case, I would not issue the dictum that the district courts in these administrative search cases should be restricted to the standards which apply to post-search cases. I would leave that question for later decision when the issue is actually in controversy. We may then find that justice requires a more flexible standard and that well intentioned, carefully set forth but nevertheless *false* facts should not necessarily be accepted by the court.

I agree that where a warrant is based on "specific evidence of an existing violation,"

the district court is to determine whether there is probable cause, tested by a reasonableness standard less than that required in the criminal sense, and should not focus on whether there is in fact a violation. In this case, the company tried to prove and the district court considered more than should have been considered in the search warrant proceeding.