Jill S. **ROLEK**, Plaintiff,

v.

**IOWA DISTRICT COURT FOR POLK COUNTY, Defendant.**

No. 95–1582.

Supreme Court of Iowa.

Oct. 23, 1996.

Randall Horstmann of Nyemaster, Goode, McLaughlin, Voigts, West, Hansell & O'Brien, P.C., Des Moines, for plaintiff.

Timothy M. Duffy, Des Moines, and Jeanne K. Johnson, Des Moines, for defendant.

Considered by HARRIS, P.J., and CARTER, LAVORATO, SNELL, and TERNUS, JJ.

CARTER, Justice.

In this original certiorari action, plaintiff, Jill Rolek, challenges the finding of the district court that she was in contempt for violating the "spirit and word" of a court order. The court order in question had been issued by a judge other than the one who made the finding of contempt. After reviewing the record and considering the arguments presented, we agree with Jill's claim that the evidence fails to show that she violated the order in question in any particular.

The court order in question pertained to the recovery of funds taken from the custodial accounts of the three minor children of Jill Rolek by their father and Jill's former husband, Dennis Rolek. In an equitable action for an accounting brought by Jill against Dennis and his current wife, Debbie Rolek, a special master appointed by the court concluded that the defendants had improperly removed funds from the children's custodial accounts established under the Uniform Transfers to Minors Act, Iowa Code ch. 565B (1993).

In response to the master's report, the district court, acting through Judge Robert A. Hutchison, removed Dennis Rolek as custodian of his children's accounts. The court, both orally and in its written order, declared that neither of the children's parents should, in the future, serve as custodian of the children's funds and that the court would appoint a custodian agreed to by both Jill and Dennis. The balance of the court's order provided as follows:

5. The actions of the Defendants were in bad faith and Plaintiffs should be awarded a judgment against Dennis F. Rolek in the sum of $2,445.00 for attorney's fees. The findings of the Court pertaining to this issue entered on January 11, 1995 are hereby incorporated as if fully set out herein.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Plaintiff Rachel Rolek have and recover judgment against Defendants for $11,149.76 with interest at 10% from 1/3/93 and the costs of this action taxed by the clerk; and that Plaintiff Brian Rolek have and recover judgment against Defendants for $12,-

425.96 with interest at 10% from 1/3/93 and the costs of this action taxed by the clerk, and that Plaintiff Alex Rolek have and recover judgment against Defendants for $12,726.76 with interest at 10% from 1/3/93 and the costs of this action taxed by the Clerk.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that *Linda Robel* is appointed custodian for the three minor's accounts.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that judgment is entered against the Defendant, Dennis F. Rolek and in favor of the Plaintiffs for $2,445.00 in attorney's fees.

IT IS FURTHER ORDERED ADJUDGED AND DECREED that Court costs are assessed to the Defendants.

It is clear from the evidence that Jill and Dennis had some communications concerning Linda Robel's appointment as custodian prior to the time that she was so designated by the court. Jill testified that she spoke with Robel on two occasions prior to the court's order, the first time being more than a month prior thereto. According to Jill, on both occasions, Robel asked questions concerning the duties of a custodian under the Uniform Transfers to Minors Act. She indicated that she did not wish to devote too much time to the management of these accounts. Jill testified that she sought answers to some of Robel's questions from the Merrill Lynch office in which the children's custodial accounts had been placed, with Dennis as custodian, prior to his conversion of their funds. She obtained various self-managing investment options from Merrill Lynch and conveyed them to Robel. Robel did not indicate to Jill what she ultimately intended to do with the children's money.

The judgments against Dennis and Debbie Rolek in the action for an accounting were entered on January 31, 1995. They remained unpaid until May 15, 1995, at which time Dennis and Debbie issued a single check payable to Dennis's three children, Rachel, Brian, and Alex, for a sum equal to the aggregate amount of the judgments granted the children, individually, plus accrued interest. Dennis's attorney, Tim Duf-

fy, and the custodian, Linda Robel, were included as additional payees of the check. The check was delivered to Mr. Duffy.

At a time shortly following his receipt of the check, Mr. Duffy met with Jill and her attorney concerning satisfaction of the children's judgment against Dennis and Debbie. At this meeting, Duffy endorsed the check and delivered it to Jill's attorney. In Duffy's presence, Jill's attorney gave the check to Jill, and discussions took place concerning Jill's endorsing the check on behalf of her minor children and delivering it to the custodian, Linda Robel.

Over the ensuing eight days, Jill attempted to contact Linda Robel, both by telephone and by a trip to her residence. These efforts proved unsuccessful. Dennis and Debbie were attempting to sell some real estate and desired a satisfaction of the judgment by Jill, as the children's next friend in the litigation. Jill did not wish to issue a satisfaction until the check had been paid by the drawee bank. Frustrated by her inability to contact Robel, she took the check to the Merrill Lynch office from which the funds had previously been withdrawn and opened new accounts for each of the three children in the amount of one-third of the settlement check. Each account was opened in the name of Linda Robel as custodian for the particular child. To facilitate these transactions, Jill endorsed the children's names on the back of the check and also endorsed thereon "Linda Robel, Trustee."

When Dennis and Debbie learned of Jill's actions with the check, they sought and obtained from the court a series of orders for Jill to show cause why she should not be found in contempt for violating the court's order of January 31, 1995. The first two orders were later rescinded based on procedural irregularities. The third order to show cause produced the finding of contempt that is challenged in this original certiorari action.

The application for an order to show cause filed by Dennis and Debbie asserted that Jill had, without authorization, signed Linda Robel's name on the settlement check and then personally acted to invest the funds contrary to the court's order that Linda Robel should

have charge of the children's accounts. After hearing evidence on the matter, the district court, this time acting through Judge Robert Blink, found that the contentions made by Dennis and Debbie were correct, that Jill's actions were a violation of Judge Hutchison's order, and that those actions constituted a contempt.

## I. Scope of Review.

 Although there is no statutory right to appeal from an order to punish for contempt, the proceedings may, in proper cases, be reviewed by certiorari. Iowa Code § 665.11 (1993). Certiorari is an action at law, and our review is not de novo. *Bevers v. Kilburg*, 326 N.W.2d 902, 904 (Iowa 1982). No person may be punished for contempt unless the finding of contempt is established by proof beyond a reasonable doubt. *Phillips v. Iowa Dist. Ct.*, 380 N.W.2d 706, 709 (Iowa 1986).

## II. Whether a Contempt Was Established.

 Jill challenges the district court's finding of contempt on several grounds, the first being that, as shown by the evidence, no conduct on her part constituted a violation of Judge Hutchison's order. Because we agree with that contention, we need not consider her other arguments. When a contempt is alleged to involve a violation of a court's order, that violation must be found to be willful. *Lutz v. Darbyshire*, 297 N.W.2d 349, 353 (Iowa 1980). Acting contrary to a known duty may constitute willfulness for this purpose. *Palmer College of Chiropractic v. Iowa Dist. Ct.*, 412 N.W.2d 617, 621 (Iowa 1987); *Lutz*, 297 N.W.2d at 353. In seeking to determine what duties may be reasonably known by the alleged contemnor with respect to a particular court order, the provisions alleged to have been violated must be clear and definite. *Palmer College*, 412 N.W.2d at 620; *Copic v. Iowa Dist. Ct.*, 356 N.W.2d 223, 226 (Iowa 1984).

Applying the foregoing rules to the present case, we are convinced that Jill's actions, of which Dennis and Debbie complain, were not proscribed by Judge Hutchison's order. The district court's decision that those actions were so proscribed was influenced by its conclusions that Jill had "controlled" the children's funds and made an investment decision with respect thereto.

It is significant in this regard that the relief granted against Dennis and Debbie in this accounting action was not an order for restoration of the res but, rather, a money judgment. The judgment creditor was Jill, as next friend for her minor children. Satisfaction of the judgment thus envisioned payment to Jill in that capacity. She was thus expected to control the funds to some limited extent under the court's order. The order gives no guidance or direction for Jill's interaction with Linda Robel for purposes of placing the funds recovered under the latter's control. It is, of course, implicit in the court's order that this interaction take place with some reasonable dispatch and that Jill should do nothing to jeopardize the res while subject to her control. We are convinced, however, that the record will not support a finding that she failed to meet either of these implicit conditions.

Jill's actions in establishing the accounts with Merrill Lynch may not, in our view, be accurately characterized as an investment decision. Those actions were taken as a means to transfer the funds to Robel's control notwithstanding her protracted unavailability.[1] A Merrill Lynch compliance officer testified that, from the instant those accounts were opened, Jill was divested of any control over this res and that the control then existed exclusively in Linda Robel. The documentation of the transactions that was placed in evidence confirmed that view. Robel was free to withdraw the funds from these money market accounts without penalty or service charge and invest them as she chose. It thus appears that any affirmative action taken by Jill concerning the children's funds was to establish Robel's control over the res rather than to deny that control. We find this to be entirely consistent with Judge Hutchison's order.

---

**1.** Linda Robel's unavailability is confirmed by the testimony of the Merrill Lynch compliance officer concerning difficulties in contacting her following the opening of the accounts.

We also disagree with the district court's conclusion that, based on the record evidence, Jill should have known that she was without authority to endorse Robel's name on the back of the check. The judge believed that her answers while testifying to this issue were evasive and that his own rather extended examination of Jill as a witness established her knowing lack of authority to so act. Our review of the record suggests otherwise. It was Jill's contention throughout her testimony that, although she received no express authority from Robel to endorse the check in her name so as to facilitate the opening of the Merrill Lynch accounts, she believed that, in carrying out the order of the court, such authority was implicit. That explanation finds considerable support in the surrounding circumstances. At the time of these transactions, a relevant provision in the Uniform Commercial Code provided:

> As between the obligor and the obligor's immediate obligee or any transferee the terms of an instrument may be modified or affected by any other written agreement executed as a part of the same transaction....

Iowa Code § 554.3119 (1993).[2] We conclude that for purposes of this statute "any other written agreement" includes the provisions of court orders that are binding on the parties to the instrument. Judge Hutchison's order was binding on Dennis and Debbie and required payment to Jill, as the children's next friend, so that she could act to place the custodial accounts under Linda Robel's control. While we are convinced that the actions of Dennis and Debbie in placing Robel's name on the draft was intended to facilitate that result rather than hinder it, Jill could reasonably believe that she was free to ignore the consequences of that endorsement as long as her actions were consistent with carrying out the court's order. Any problem that existed with the drawee bank concerning Robel's name appearing on the check was obviated by the fact that Merrill Lynch agreed to guarantee all prior endorsements on the instrument.

For all of the reasons that we have discussed, we find that the evidence was insufficient to support the district court's finding that Jill was in contempt. We sustain the writ of certiorari and annul the finding of contempt and the order implementing that finding.

**WRIT SUSTAINED.**

---

2. This statute was repealed effective July 1, 1995. 1994 Iowa Acts ch. 1167, § 121(1).