Andrew SULMA, Plaintiff,

v.

**IOWA DISTRICT COURT FOR
WASHINGTON COUNTY,
Defendant.**

No. 97–816.

Supreme Court of Iowa.

Feb. 18, 1998.

Davis L. Foster of Foster Law Office, Iowa City, for plaintiff.

Robert G. Schlegel of Day, Meeker, Lamping & Schlegel, Washington, for defendant.

Considered by HARRIS, P.J., and LARSON, CARTER, NEUMAN, and TERNUS, JJ.

NEUMAN, Justice.

The district court found Andrew Sulma in contempt for refusing his former wife visitation with their two minor children. Sulma claims, by way of petition for certiorari, that the court's order was not supported by substantial evidence. He also contests, on due process grounds, the conditions imposed for purging his contempt. We annul the writ.

**I. Background.** The marriage of Andrew and Tammy Sulma was dissolved in 1994. The court awarded them joint legal custody of their two children, Kathryn (born in 1986) and Kenneth (born in 1988). The children were placed in Andrew's primary care, subject to liberal visitation by Tammy. The court's decree made plain that the decision was not based on any superior parenting skills held by Andrew, but on his "stability." Tammy suffered from—and continues to battle—a variety of mental problems that prevent her from assuming the day-to-day care of the children. She was nevertheless viewed by the court as the more emotionally nurturing parent. Andrew, to his credit,

could be counted on to provide the material necessities of life.

The controversy here concerns Andrew's repeated resistance to Tammy's visitation during the month of March 1997. The conflict had its origins in an incident occurring September 16, 1996, when Tammy arrived to pick up the children and, in Andrew's words, "was intoxicated or having some difficulty because of slurred speech and irrational behavior." Andrew confronted Tammy and stopped the children from getting into her car. Tammy reacted physically. She was ultimately arrested and, after pleading guilty to assault, was placed on probation. A no-contact order issued.

For several months after this incident the visitation went smoothly because Andrew's sister, Marsha, facilitated the exchange of children from one parent to the other. Tammy remained in her car and Andrew stayed in his house. When the no-contact order was lifted and Marsha's new work schedule prevented her from acting as "go-between," however, things deteriorated rapidly. On five consecutive dates Tammy attempted to exercise her scheduled visits with the children but Andrew refused to relinquish them to her care. In each instance, Andrew attempted to engage Tammy in conversation to gauge her sobriety. Tammy, accompanied by her new husband, James, declined to submit to Andrew's "walk and talk" routine. As a result she was refused visitation.

At the hearing on Tammy's subsequent application to find Andrew in contempt, the court received extensive medical and psychological records concerning Tammy's mental health. Having examined this evidence in detail, the court found that although Tammy suffered a temporary relapse in her alcoholism in September 1996, "the records [did] not disclose any episodes of drinking alcohol since that time." Andrew was not justified, the court ruled, in "unilaterally" determining Tammy's fitness for visitation by subjecting her to tests for sobriety. Concluding that Andrew willfully and repeatedly refused Tammy's attempts to exercise her rightful visitation, the court found Andrew in contempt. The court sentenced Andrew to twenty days incarceration but withheld mittimus, ordering

> that [Andrew] can purge himself of contempt by allowing all visitation which is scheduled after the filing of this order and not denying [Tammy] visitation as scheduled. In the event [Andrew] again refuses to allow visitation, mittimus shall issue for his incarceration for the period of 20 days.

Andrew petitioned for certiorari to challenge both the district court's order punishing him for contempt as well as the lawfulness of the order directing "mittimus shall issue" if further visitation is refused. Our review is at law, not de novo. *Madyun v. Iowa Dist. Ct.*, 544 N.W.2d 441, 443 (Iowa 1996). The question is whether the district court acted illegally or without jurisdiction. *See id.;* Iowa R. Civ. P. 306.

**II. Substantial Evidence.** Andrew claims the court's finding of contempt is not supportable because, as a parent, Andrew has a duty to protect his children from dangers associated with drunk driving. Andrew's good intentions notwithstanding, the record reveals no evidence that Tammy engaged in drinking and driving when she and James attempted to pick up the children for scheduled visitation in March 1997. Indeed the district court found no proof of any drinking episodes since the September 1996 altercation, some six months before the events at issue here. Although Andrew's brief cites several clinical notes addressing Tammy's depression, anxiety, and craving for alcohol, none are contemporaneous with the March 1997 events. Clearly Andrew's rationale for refusing visitation is based on unfortunate past events, not the current status of Tammy's mental health.

Moreover, the dissolution decree's requirement that the parties communicate concerning the children's welfare does not condition Tammy's visitation on a "walk and talk" test imposed by Andrew. In a telling observation, the dissolution court predicted efforts by Andrew to estrange the children from their mother and sought to discourage such behavior:

> All of the evidence in this case, including Andrew's own witnesses, did not indicate that there was danger of Tammy's physical

or mental abuse of either of the children. Andrew must see that further attempts, conscious or subconscious, to separate them under the guise of protection only adds problems where too many problems already exist.

The record before us reveals that the court's concerns were well founded.

We conclude the record amply supports the court's finding that, under the reasonable-doubt standard established in *Phillips v. Iowa District Court,* 380 N.W.2d 706, 709 (Iowa 1986), Andrew failed to abide by the visitation terms set out in the parties' dissolution decree. He acted with willful disobedience, satisfying the required proof for contempt. *See McKinley v. Iowa Dist. Ct.,* 542 N.W.2d 822, 824 (Iowa 1996); *In re Marriage of Ruden,* 509 N.W.2d 494, 496 (Iowa App.1993).

**III. Due Process.** Andrew also claims that the district court's order, which conditions the withholding of mittimus on his future compliance with visitation requirements, violates due process. He contends that, prior to confinement, he must be afforded the opportunity to explain his behavior. Tammy concedes as much, citing the well-settled principle that "due process requires notice and hearing before commitment can be ordered for failure to comply with [conditions for purging contempt]." *Greene v. District Court,* 342 N.W.2d 818, 821 (Iowa 1983); *accord Madyun,* 544 N.W.2d at 443. The question is whether the district court's order is rendered unlawful by its failure to recite this familiar requirement. We think not.

We view the problem as a matter of "ripeness." Andrew seeks pre-enforcement review of the court's order, evidently fearful that the process normally attending violation of a court order may be denied him in the future. *Cf. Iowa Coal Mining Co. v. Monroe County,* 555 N.W.2d 418, 432 (Iowa 1996) (ripeness doctrine avoids premature adjudication of cases when issues posed are not fully formed). We decline to engage in such speculation. First, we are confident in the trial court's familiarity with the line of cases from *Greene* to *Madyun.* Second, the court's order merely establishes the condi-

tions upon which mittimus will issue following hearing. To date, the court has neither exceeded its authority nor acted illegally by depriving Andrew of due process. Accordingly, we annul the writ.

**WRIT ANNULLED.**