**In the Matter of the INSPECTION OF TITAN TIRE.**

**Titan Tire Corporation, Appellant,**

**v.**

**Labor Commissioner of the State of Iowa, Appellee.**

**No. 99–0555.**

Supreme Court of Iowa.

Dec. 19, 2001.

Gene R. La Suer and Becky S. Knutson of Davis, Brown, Koehn, Shors & Roberts, P.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, Shauna Russell Shields, Assistant Attorney General, Gail Sheridan–Lucht, Iowa Workforce Development, Division of Labor Services, for appellee.

LAVORATO, Chief Justice.

Titan Tire Corporation (Titan) appeals from a district court order denying its motion to quash an administrative inspection warrant for Iowa Occupational Safety and Health Administration (IOSHA) inspectors to conduct a safety inspection at its plant, and allowing striking union representatives to accompany the inspectors during the inspection. In a certiorari action, Titan challenges a district court finding that it was in contempt for violating

the order allowing the inspection and permitting the striking union representatives to accompany the IOSHA inspectors during the inspection. We affirm on the appeal and annul the writ in the certiorari proceeding.

## I. Background Facts and Proceedings.

On March 19,1999, IOSHA received a complaint from John A. Peno, president of United Steelworkers of America Local 164 (Union). The complaint listed nineteen alleged violations of the Iowa Occupational Safety and Health Act (IOSH Act) at the Titan plant in Des Moines. IOSHA is a bureau of the division of labor services of the department of workforce development, which enforces the federal occupational safety and health regulations. *See* Iowa Admin. Code r. 875—1.3.

In his letter accompanying the complaint, Peno explained that (1) the Union had been in an unfair labor practice strike since May 1, 1998, against Titan; (2) he had not been inside the Titan plant since the strike began; and (3) a non-striking Titan employee and a Titan supervisor, who did not wish to be identified, reported the alleged violations to him. At all times material to this case, the Union had not been decertified and was still the exclusive authorized representative of Titan workers.

Mary Bryant, IOSHA administrator, reviewed the complaint. Bryant then called Peno to clarify some of the information in it. Following that conversation, Bryant determined there were reasonable grounds to believe a violation or violations of the safety and health standards existed at Titan that threatened physical harm to employees. She instructed IOSHA inspectors Joe Sawyer and Deborah Babb to conduct a safety inspection at the Titan plant.

On March 29, 1999, Titan denied IOSHA inspectors entry to conduct an inspection without a warrant. The inspection team then sought an inspection warrant from the district court based on the application of the deputy labor commissioner. The application was supported by affidavits from Bryant and Sawyer. District Judge Paul R. Huscher granted the inspection warrant, authorizing representatives of the labor commissioner to enter Titan's premises and conduct a safety inspection of all areas of the workplace.

On the same day, the IOSHA inspectors returned to Titan to serve the warrant and inspect the plant. The inspectors told Titan that they wanted to inspect the plant, accompanied by striking Union representatives. Titan told the inspectors that they could inspect the plant, but it would not permit Union representatives to participate in the inspection. Titan cited the ongoing strike and acts of violence and disruption that had accompanied the strike as its reasons for refusing entry of Union representatives. The inspectors refused to inspect the plant without Union representatives present.

The following day, Titan filed a motion to quash the inspection warrant. On April 5, IOSHA resisted the motion and filed a petition asking the district court to hold Titan in contempt for refusing to allow the inspection to proceed pursuant to the warrant.

On April 12, the IOSHA inspectors returned to Titan with the March 29 inspection warrant. Titan again refused entry based on its lawyer's statement that neither IOSHA nor Union representatives would be allowed to inspect until after the court hearing.

On April 14, Titan filed a supplement to its motion to quash, alleging that the inspection warrant lacked probable cause be-

cause it was based on stale information and hearsay. Following a hearing on April 15, District Judge Jerrold W. Jordan orally denied the motion to quash and denied IOSHA's petition for contempt. Judge Jordan authorized IOSHA to execute the inspection warrant pursuant to Iowa Code chapter 88, which meant striking Union representatives could be present during the inspection. Judge Jordan also denied Titan's oral request for a stay. The following day, the judge filed a written order incorporating his oral ruling.

On April 16, Titan appealed and requested a stay of the inspection until we could decide the merits of the appeal. Titan did not file a supersedeas bond. On the same day, IOSHA inspectors returned to the Titan plant to inspect it. Titan again refused to permit the inspection if Union representatives were allowed to participate. Titan informed the inspectors that it had appealed Judge Jordan's order and had requested a stay from our court. A Titan representative read a statement allegedly from its lawyer which indicated that Titan believed a ten-day automatic stay applied to Judge Jordan's order.

On April 19, Titan filed an "amended supplement to appeal: request for stay and emergency hearing." In its amended request, Titan agreed to permit IOSHA inspectors to conduct an inspection, but without striking Union representatives. We denied the request for a stay on April 21.

Meanwhile, on April 19, IOSHA filed a second contempt petition in the district court. The petition asked the district court to find Titan in contempt for failing to comply with Judge Jordan's April 16 order.

On April 22, Titan permitted IOSHA to inspect its plant with the participation of Union representatives. IOSHA completed the inspection without incident.

On April 28, Judge Jordan found Titan in contempt for failing to comply with his April 15 (oral) and 16 (written) order and assessed it a $500 fine. Titan filed a petition for writ of certiorari challenging Judge Jordan's contempt ruling. We granted the writ and, upon Titan's motion, consolidated Titan's appeal from the ruling on its motion to quash and its certiorari challenge to the contempt ruling.

We set out additional facts where relevant to the issues discussed.

## II. Issues.

Titan challenges the district court's denial of its motion to quash on two grounds. First, Titan contends probable cause for the issuance of the inspection warrant was lacking. Second, even if there was probable cause for the warrant, the district court should not have allowed striking Union representatives to participate in the inspection.

As for the district court's contempt finding, Titan contends its actions were not willful and therefore did not rise to the level of contempt. In the alternative, Titan contends it purged itself of any contempt.

## III. Inspection Warrant—Finding of Probable Cause.

### A. Background.

Under section 8 of the Occupational Safety and Health Act of 1970 (OSHA), 29 U.S.C. § 657, the secretary of labor is authorized to conduct health and safety inspections of workplaces within the Act's jurisdiction. Section 8(a) gives the secretary the general power to enter and inspect workplaces to carry out the purposes of the Act. 29 U.S.C. § 657(a). Section 8(f)(1) specifically requires the secretary to conduct a "special inspection" as soon as practicable whenever the secretary re-

ceives a written employee complaint that leads the secretary reasonably to believe that a violation exists at the workplace. 29 U.S.C. § 657(f)(1). Neither provision expressly states that the secretary must secure a warrant before conducting a search.

In *Camara v. Municipal Court,* the Supreme Court held that an administrative search by municipal health and safety inspectors without a search warrant lacked "the traditional safeguards which the Fourth Amendment guarantees to the individual." 387 U.S. 523, 534, 87 S.Ct. 1727, 1733, 18 L.Ed.2d 930, 938 (1967). To determine the existence of probable cause to issue an inspection warrant, "the need for the inspection must be weighed in terms of [the] reasonable goals of code enforcement." *Id.* at 535, 87 S.Ct. at 1734, 18 L.Ed.2d at 939. Probable cause "must exist if reasonable legislative or administrative standards for conducting an area inspection are satisfied with respect to a particular building." *Id.* at 538, 87 S.Ct. at 1736, 18 L.Ed.2d at 941.

In addressing the propriety of warrantless nonconsensual inspections under section 8(a) of OSHA, the Supreme Court has held that the Fourth Amendment requires an administrative search warrant be obtained prior to such inspections. *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 311, 98 S.Ct. 1816, 1819, 56 L.Ed.2d 305, 310 (1978). Similarly, the Court indicated that the Constitution requires the secretary to obtain such a warrant for a section 8(f) inspection. *Id.* at 320 n. 16, 98 S.Ct. at 1824 n. 16, 56 L.Ed.2d at 316 n. 16. The Court held that OSHA was unconstitutional insofar as it purported to authorize inspections without a warrant or its equivalent. *Id.* at 325, 98 S.Ct. at 1827, 56 L.Ed.2d at 319.

In a footnote, the *Barlow's* opinion stated that "a regulation expressly providing that the Secretary could proceed *ex parte* to seek a warrant or its equivalent would

appear to be ... within the Secretary's power...." *Id.* at 320 n. 15, 98 S.Ct. at 1824 n. 15, 56 L.Ed.2d at 316 n. 15. The Court's approval of such procedures meant that they passed the reasonableness requirement of the Fourth Amendment. *Rockford Drop Forge Co. v. Donovan,* 672 F.2d 626, 630 (7th Cir.1982). Shortly after *Barlow's* was decided, the secretary amended its compulsory process regulation by defining compulsory process to mean "the institution of any appropriate action, including *ex parte* application for an inspection warrant or its equivalent." *Id.*

■ The IOSH Act mirrors the federal OSHA. *Compare* Iowa Code § 88.6(1) (1997), *with* 29 U.S.C. § 657(a); Iowa Code § 88.6(5) *and* Iowa Admin. Code r. 875—3.7, *with* 29 U.S.C. § 657(f). Therefore, federal law interpreting the OSHA provisions is persuasive authority. *Stromberg Hatchery v. Iowa Employment Sec. Comm'n,* 239 Iowa 1047, 1050–51, 33 N.W.2d 498, 500–01 (1948) (federal decisions construing federal Social Security Act entitled to "unusual respect and deference" where Iowa statute used identical language). Iowa has an IOSH Act regulation regarding compulsory process similar to the federal regulation. *Compare* Iowa Admin. Code r. 875—3.2(3), *with* 29 C.F.R. § 1903.4(d). The Iowa regulation provides:

> For purposes of this rule, the term "compulsory process" shall mean the institution of any appropriate action, including ex parte application for an inspection warrant or its equivalent. Ex parte inspection warrants shall be the preferred form of compulsory process in all circumstances where compulsory process is relied upon to seek entry to a workplace under this rule.

Iowa Admin. Code r. 875—3.2(3).

In addition, Iowa has a statute authorizing courts to issue administrative search warrants:

The courts and other appropriate agencies of the judicial branch of the government of this state may issue administrative search warrants, in accordance with the statutory and common law requirements for the issuance of such warrants, to all governmental agencies or bodies expressly or impliedly provided with statutory or constitutional home rule authority for inspections to the extent necessary for the agency or body to carry out such authority, to be executed or otherwise carried out by an officer or employer of the agency or body.

Iowa Code § 808.14.

### B. Probable cause standards for administrative search warrants.

In *Barlow's*, the Supreme Court explained that the secretary of labor's entitlement to inspect

> will not depend on his demonstrating probable cause to believe that conditions in violation of OSHA exist on the premises. Probable cause in the criminal sense is not required. For purposes of an administrative search such as this, probable cause justifying the issuance of a warrant may be based not only on specific evidence of an existing violation but also on a showing that "reasonable legislative or administrative standards for conducting an . . . inspection are satisfied with respect to a particular [establishment]."

*Barlow's*, 436 U.S. at 320, 98 S.Ct. at 1824, 56 L.Ed.2d at 316 (quoting *Camara*, 387 U.S. at 538, 87 S.Ct. at 1736, 18 L.Ed.2d at 941).

For a period of time after *Barlow's*, there was some discrepancy over whether the "administrative probable cause" standard applied to issuance of administrative search warrants based on "specific evidence of an existing violation," *i.e.*, OSHA inspections based on employee complaints.

The Supreme Court cleared up the discrepancy, holding the standard did apply. *See Michigan v. Tyler*, 436 U.S. 499, 507, 511–12, 98 S.Ct. 1942, 1949, 1951, 56 L.Ed.2d 486, 496–97, 500 (1978) (administrative probable cause is the standard for obtaining a warrant when probable cause is based on specific evidence, *i.e.*, proof that a fire has occurred); *Burkart Randall Div. of Textron, Inc. v. Marshall*, 625 F.2d 1313, 1318 n. 6 (7th Cir.1980) (citing cases). Thus, administrative probable cause justifying the issuance of an OSHA inspection warrant may be based *either* on (1) specific evidence of an existing violation; *or* (2) a showing that reasonable legislative or administrative standards for conducting an inspection are satisfied with respect to a particular establishment.

We apply these same standards to any administrative search warrant authorized under Iowa Code section 808.14. We do so because such warrants must pass constitutional muster under the Fourth Amendment of the Federal Constitution, which is made binding on the States through the Fourteenth Amendment. *Minnesota v. Dickerson*, 508 U.S. 366, 372, 113 S.Ct. 2130, 2135, 124 L.Ed.2d 334, 343 (1993); *State v. Brecunier*, 564 N.W.2d 365, 367 (Iowa 1997). *See* U.S. Const. amend. IV (providing that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated," and "no Warrants shall issue, but upon probable cause").

### C. Quantum of specific evidence.

In this case, the administrative search warrant stands or falls on the first showing: specific evidence of an existing violation. Although *Barlow's* made clear that an administrative search warrant could issue upon such a showing, the Court did not specify the quantum of specific evidence

that must be presented to establish the reasonableness of the inspection.

However, in fashioning a proper test, one court has recognized two important considerations underlying the reasonableness standard that provide guidance. *West Point–Pepperell, Inc., v. Donovan,* 689 F.2d 950, 957 (11th Cir.1982). First,

administrative searches involve less of an intrusion on privacy than criminal searches. Accordingly, administrative search warrants may be obtained upon a lesser showing of probable cause than is required for criminal search warrants, for which the affiant need show "the probability and not a prima facie showing, of criminal activity."

*Id.* at 957–58 (quoting *United States v. Melancon,* 462 F.2d 82, 89 (5th Cir.1972)) (citations omitted).

The second consideration

is that a showing of administrative probable cause must satisfy the basic purpose of the Fourth Amendment, which is "to safeguard the privacy and security of individuals against arbitrary invasions by government officials."

*Id.* at 958 (quoting *Barlow's,* 436 U.S. at 312, 98 S.Ct. at 1820, 56 L.Ed.2d at 311). As applied to administrative searches, "this principle requires that persons not be subject to the unbridled discretion of 'executive and administrative officers, particularly those in the field, as to when to search and whom to search.'" *Id.* (quoting *Barlow's,* 436 U.S. at 323, 98 S.Ct. at 1826, 56 L.Ed.2d at 317–18).

▮▮▮ Therefore, the evidence of a specific violation necessary to establish administrative probable cause,

while less than that needed to show a probability of a violation, must at least show that the proposed inspection is based upon a reasonable belief that a violation has been or is being committed

and not upon a desire to harass the target of the inspection. This requirement is met by a showing of specific evidence sufficient to support a reasonable suspicion of a violation.

*Id.; accord Matter of Inspection of Workplace Located at 526 Catalan Street, St. Louis, Missouri,* 741 F.2d 172, 174–75 (8th Cir.1984). More specifically, "there must be some plausible basis for believing that a violation is *likely* to be found." *Marshall v. Horn Seed Co.,* 647 F.2d 96, 102 (10th Cir.1981). We have recognized in the criminal context that reasonable suspicion can arise from information that is less reliable than that required to show criminal probable cause. *State v. Walshire,* 634 N.W.2d 625, 626 (Iowa 2001) (holding that information provided during cellular telephone call by anonymous citizen informant was sufficiently reliable and provided police officer with reasonable suspicion to conduct *Terry* stop of defendant's automobile).

The question then becomes: How much and what kind of "specific evidence" is "sufficient to support a reasonable suspicion of a violation" in this case? The answer centers on the statutory provision authorizing inspections of worksites by the labor commissioner or his representatives. It provides in relevant part:

5. *Special inspections.* Any employees or authorized employee representative who believes that a violation of a safety or health standard exists that threatens physical harm, or that an imminent danger exists, may request an inspection by giving notice to the commissioner or the commissioner's authorized representative of such violation or danger. Any such notice shall be reduced to writing, shall set forth with reasonable particularity the grounds for the notice, and shall be signed by the employees or authorized employee representative, and

124

a copy shall be provided the employer or the employer's agent no later than at the time of inspection, except that upon the request of the person giving such notice the person's name and the names of individual employees referred to therein shall not appear in such copy or on any record published, released, or made available pursuant to this section. If, upon receipt of such notification, the commissioner determines that there are reasonable grounds to believe that such violation or danger exists, the commissioner shall make a special inspection in accordance with the provisions of this section as soon as practicable, to determine if such violation or danger exists. If the commissioner determines that there are no reasonable grounds to believe that a violation or danger exists, the commissioner shall notify the employees or authorized employee representative in writing of such determination.

Iowa Code § 88.6(5); *see also* Iowa Admin. Code r. 875—3.7 (implementing section 88.6).

 Thus, before applying for an administrative warrant to inspect, the commissioner must receive a request for an inspection from an employee or authorized employee representative. The complainant must believe that a violation of a safety or health standard that threatens physical harm exists, or that an imminent danger exists. The notice must be in writing and signed, and must set forth with reasonable particularity the grounds for the notice. Upon receiving the notice, the commissioner shall proceed to inspect if he or she determines there are reasonable grounds to believe that such violation or danger exists. We think affidavits in support of an application for an administrative search warrant to inspect should contain information showing substantial compliance with these requirements.

The information before the district court at the time it issued the inspection warrant included the following: (1) the application; (2) the affidavit of Mary Bryant, IOSHA administrator; and (3) the affidavit of Joe Sawyer, IOSHA compliance safety and health officer.

The application signed by the deputy labor commissioner stated, among other things, the following: The division of labor received a complaint on March 19, 1999, meeting the requirements of Iowa Code section 88.6(5). The complaint was from John A. Peno, representative of Titan employees. The signed complaint alleged that at the time of filing, the hazards alleged in the complaint existed at the Titan plant. Mary L. Bryant, IOSHA administrator, determined there were reasonable grounds to believe that a violation or violations of safety and health standards may exist at the Titan plant, which threaten physical harm to the employees. Management at Titan denied Joe Sawyer, compliance safety and health officer for the division of labor, admission to the plant to conduct a safety inspection pursuant to Iowa Code chapter 88. The application for a safety inspection warrant was being made pursuant to Iowa Code sections 88.6 and 808.14, and *Barlow's*.

Bryant's affidavit, attached to the application, stated essentially the same thing as the application. In addition, Bryant attached a copy of the complaint to her affidavit and incorporated it by reference. Bryant stated that she assigned Joe Sawyer to conduct a safety inspection at the Titan plant *during regular working hours*.

The complaint attached to Bryant's affidavit was entitled "Notice of Alleged Safety or Health Hazards." It was dated March 19, 1999, and gave the complainant's name as John A. Peno, an authorized

representative of employees affected by the complaint. The complaint indicated that Peno "believes that a violation of an Occupational Safety or Health standard exists which is a job safety or health hazard at the [Titan plant]." Nineteen violations were listed. Some dealt with absence of electrical guards on electrical equipment. Others dealt with absence of guards on machinery. Additionally, the complaint alleged that a "list of safety items needing correction has been given to the Safety Director, but was 'shelved' with no action being taken."

Sawyer's affidavit, also attached to the application, stated that he went to the Titan plant during regular working hours to conduct an inspection but was denied admission by management.

The Eleventh Circuit described the appropriate standards for reviewing a magistrate's finding of probable cause:

> The standards for reviewing a magistrate's finding of probable cause are the same for both administrative and criminal warrants. In passing on the validity of a warrant, the role of the reviewing court is limited. A magistrate's probable cause determination is entitled to great deference, and is conclusive in the absence of arbitrariness. Moreover, judicial review of the sufficiency of an affidavit for the issuance of a warrant must be strictly confined to the information brought to the magistrate's attention. Except in those situations [where a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) is warranted], a reviewing court should not conduct a probable cause hearing in which it considers evidence not presented to the magistrate.

*West Point–Pepperell*, 689 F.2d at 959 (citations omitted).

Other federal courts also indicate that the review of an administrative search warrant should be confined to the "four corners" of the application, "in the absence of intentional or grossly negligent false statements made to the issuing magistrate." *Donovan v. Hackney, Inc.*, 583 F.Supp. 773, 776 (W.D.Okla.1984); *accord Martin v. Int'l Matex Tank Terminals— Bayonne*, 928 F.2d 614, 620 (3d Cir.1991) ("Subject to a narrow exception not at issue here, the reviewing court may consider only evidence within the four corners of the warrant application to the magistrate."); *Horn Seed Co.*, 647 F.2d at 104 ("In ruling on the validity of a search warrant, the reviewing court may only consider the information provided the issuing magistrate or judge."); *see also State v. Gogg*, 561 N.W.2d 360, 363 (Iowa 1997) (review of probable cause determination for criminal search warrant is limited to consideration of only that information, reduced to writing, which was actually presented to the judge at the time the application for warrant was made).

■ We agree with those federal authorities which hold that the standards of review for criminal search warrants apply to administrative search warrants. Because the standards of review for criminal probable cause and administrative probable cause are the same, our review of the district court's determination regarding the statutory sufficiency of the search warrant is for correction of errors at law. *State v. Myers*, 570 N.W.2d 70, 72 (Iowa 1997). Our review of the district court's ruling regarding probable cause for the issuance of the search warrant is de novo because the probable cause determination is a constitutional issue. *Id.; State v. Green*, 540 N.W.2d 649, 655 (Iowa 1995) (review of probable-cause-to-search finding is de novo).

██ A judge issuing the warrant "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information," probable cause exists. *Gogg*, 561 N.W.2d at 363 (citations omitted). In making that decision, the judge may rely on "reasonable, common sense inferences" from the information presented. *Id.*

 In reviewing that decision, the affidavit of probable cause is to be interpreted in a common sense rather than a hypertechnical manner. *Id.* at 364. "In addition, we draw all reasonable inferences to support the judge's finding of probable cause." *Id.* We decide close cases in favor of upholding the validity of the warrant. *Id.*

██ With these principles in mind, we review the application and affidavits to determine whether they were sufficient to support a finding of administrative probable cause. For reasons that follow we think they were. The application here is not "unrelieved boilerplate." *See Weyerhaeuser Co. v. Marshall*, 592 F.2d 373, 378 (7th Cir.1979). Nor is it merely a "conclusory statement . . . that employee complaints have been received by OSHA, without more. . . ." *Burkart Randall*, 625 F.2d at 1319. Bryant, the IOSHA administrator, attached Peno's complaint to her affidavit. She averred the alleged hazards existed at the time Peno, an authorized representative of Titan employees, filed his complaint. The complaint supports Bryant's statement because it too states that the alleged hazards existed at the time the complaint was filed. *See Matter of Establishment Inspection of Gilbert & Bennett Mfg. Co.*, 589 F.2d 1335, 1340 (7th Cir.1979) ("The district judge could correctly assume, therefore, that the information contained [in the warrant application, which incorporated the sworn affidavit of an OSHA compliance officer] was true and correct."). Bryant's affidavit and the attached list of nineteen hazards submitted by Peno to IOSHA supports a "reasonable suspicion of a violation."

In reaching our conclusion, we reject Titan's insistence that Bryant's affidavit was deficient because it did not indicate whether IOSHA performed a sufficient investigation to confirm the validity of the complaint and the "reasonableness" of the warrant request. Neither the federal statute nor the Iowa statute explicitly requires such an investigation. We are concerned as to whether the information was sufficient to support a *reasonable suspicion* of a violation, a much lesser standard than a criminal probable cause determination. As mentioned, the application supported by the affidavits with the attached complaint was sufficient to raise such suspicion. These documents clearly informed Judge Huscher of the substance of the complaint, thus allowing him to make an independent determination as to whether the inspection was justified based on the complaint.

### D. "Stale" information.

██ As a fall-back position, Titan contends the information in the complaint was stale. In support of this contention, Titan relies on Iowa Code section 88.7, which provides in relevant part:

*1. Issuance by commissioner.*

a. If, upon inspection or investigation, the commissioner or the commissioner's authorized representative believes that an employer has violated the requirements of section 88.4, of any standard, rule or rules promulgated pursuant to section 88.5, or of any regulations prescribed pursuant to this chapter, the commissioner shall with reason-

able promptness issue a citation to the employer....

....

*3. Statute of limitations.* No citation may be issued under this section after the expiration of six months following the occurrence of any violation.

Iowa Code § 88.7.

Titan contends that if IOSHA cannot issue a citation for violations more than six months old pursuant to section 88.7(3), it cannot search based on allegations of violations that are more than six months old. Titan points out that because Peno had not been in the Titan plant since April 30, 1998, the information he provided was "stale."

This argument fails in two respects. First, Peno's information was based on alleged *existing* violations at the Titan plant. His complaint and Bryant's affidavit stated the violations existed at the time of the complaint. Judge Huscher, the judge who issued the warrant, could "correctly assume" the information in Bryant's affidavit was "true and correct." *See Gilbert & Bennett Mfg.*, 589 F.2d at 1340.

Second, the Seventh Circuit rejected a similar argument in *In the Matter of Establishment Inspection of Microcosm*, 951 F.2d 121, 125 (7th Cir.1991). In that case, the company argued the warrant was untimely, citing 29 U.S.C. § 658(c) (which is identical to Iowa Code section 88.7), because the employee complaint was filed more than six months "following the occurrence of any violation." *Id.* In rejecting this argument, the court stated:

[The company] has misread the statute, for the statute refers to issuing a citation for an OSHA violation within six months of the inspection revealing the violation. The section is unrelated to the time period from the filing of a

complaint with OSHA to the time when OSHA responds.

*Id.*

■ Similarly, the time period in section 88.7 is unrelated to the time period between when the *alleged* violation occurs and when IOSHA responds to a complaint. The "occurrence of a violation" can only be determined upon inspection. To require IOSHA to determine exactly when the violation originally occurred would be an absurd result. It would mean that, even after an inspection reveals an existing violation, IOSHA could not issue a citation unless it could determine that violation had only been going on for less than six months. We adopt the interpretation in *Microcosm* and reject the one Titan suggests. *See State v. Byers*, 456 N.W.2d 917, 919 (Iowa 1990) (the court seeks a "reasonable interpretation that will best effect the legislative purpose and avoid absurd results").

In *Burkart Randall*, the employer argued that the information in the warrant application was stale because OSHA received it five and six months, respectively, before the issuance of the warrant. 625 F.2d at 1322. In rejecting the argument, the Seventh Circuit said:

In this case, the conditions alleged in the employee complaints are not of a type that will likely disappear through mere passage of time; affirmative action to correct them appears necessary. We therefore agree with the district court that the nature of the alleged conditions makes reasonable the conclusion that violations of the Act remained on Burkart's premises at the time of the warrant application. The information contained in the application is thus not stale.

*Id.*

Likewise, here, the conditions alleged were not of a type that would likely disap-

pear through the mere passage of time. It was reasonable therefore for Judge Huscher to conclude that violations of the IOSH Act remained on the Titan premises at the time of the warrant application.

## IV. Inspection Warrant—Employee Representatives.

Finally, Titan contends that even if grounds for issuance of an inspection warrant existed, the inspection should have occurred without the presence of striking Union representatives. Titan's primary objection to allowing striking Union representatives to accompany IOSHA inspectors relates to the alleged hostile environment surrounding the strike at Titan. In particular, it cites to a June 1998, district court decision finding the Union, its president, Peno, and its vice president, Pete Putney, in contempt of court for violating provisions of an injunction. That decision was not admitted at the hearing on April 15 or April 27, 1999. Titan asked Judge Jordan to take judicial notice of the proceeding at the end of the April 27, 1999, contempt hearing, but the court never ruled on that request. It is therefore not part of this record.

We note that Judge Jordan, in his April 16 ruling, made the following statement: "Even though Titan claims the employees' representative should not be present because strike conditions exist, no evidence, other than that argument was presented to support such a contention." In the same ruling, the court in effect ordered that Union representatives could accompany ISOHA inspectors during their inspection of the Titan plant.

### A. Scope of Review.

To the extent Titan challenges the district court's interpretation of the applicable statutes and regulations, we review for correction of errors at law. *State*

*v. Ceron*, 573 N.W.2d 587, 589 (Iowa 1997). The issue Titan raises also involves the IOSHA's interpretation of the act it is charged with enforcing. We defer to such interpretation unless the suggested interpretation is clearly erroneous. *Wiebenga v. Iowa Dep't of Transp.*, 530 N.W.2d 732, 734 (Iowa 1995).

### B. Applicable law.

Iowa Code section 88.6(4) provides:

Representatives of employers and employees. Subject to regulations issued by the commissioner, a representative of the employer and *an authorized employee representative shall be given an opportunity to accompany the commissioner or the commissioner's authorized representative during the physical inspection of any workplace under subsection 1 of this section, for the purpose of aiding such inspection.*

Iowa Code § 88.6(4) (emphasis added). The administrative rule implementing this code section provides that "a representative authorized by employees shall be given an opportunity to accompany the compliance safety and health officer during the physical inspection of any workplace for the purpose of aiding the inspection." Iowa Admin. Code r. 875—3.6(1).

IOSHA's internal guidelines, found in its Field Inspection Reference Manual (FIRM), define "employee representative" as

(1) a representative of the certified or recognized bargaining agent, or, if none, (2) an employee member of a safety and health committee who has been chosen by the employees ... as their OSHA representative, or (3) an individual who has been selected as the walkaround representative by the employees of the establishment.

In the event of a dispute over who qualifies as an authorized employee representative, IOSHA compliance officers have authority to resolve the dispute. Iowa Admin. Code r. 875–3.6(2).

The FIRM also provides the following regarding inspections in strike situations:

A.2.g. Strike or Labor Dispute. Plants or establishments may be inspected regardless of the existence of labor disputes involving work stoppages, strikes or picketing.

. . . .

(2) Unprogrammed inspections. Unprogrammed inspections (complaints, fatalities, etc.) will be performed during strikes or labor disputes. . . .

C. Analysis.

■■■■ Titan cites to a federal district court decision, *Amoco Oil Co. v. Marshall,* 496 F.Supp. 1234 (S.D.Tex.1980), to support its position. We find that decision factually distinguishable from this case, and therefore unpersuasive. In *Amoco,* the inspection was based on an accident; here, the complaint was made on behalf of an employee currently working in the plant and the alleged ongoing violations that existed before the strike began. Moreover, the accident in *Amoco* involved employees of a contractor working for Amoco, not employees working directly for Amoco. In addition, the *Amoco* court spent more time discussing legislative history than it did analyzing the actual text of the statutes and regulations. For example, the *Amoco* court did not address whether striking union representatives constitute employees who have a right to participate in an inspection under the federal OSHA, or whether the federal Act or its implementing regulations address the issue or provide any safeguards against the potential that striking employees might be disruptive during an inspection.

We find more persuasive *Establishment Inspection of Caterpillar, Inc.,* 55 F.3d 334 (7th Cir.1995). In *Caterpillar,* the Seventh Circuit affirmed the district court's denial of the employer's motion to quash an inspection warrant. *Id.* at 335. OSHA sought the inspection warrant after receiving a written complaint from three of Caterpillar's employees. *Id.* Shortly after receiving the complaint, the union representing the complaining employees went on strike. *Id.* The complaining employees participated in the strike. *Id.* at 335–36.

The court began its analysis with the relevant statutory provisions, concluding that "[b]oth the Act's text and implementing regulations permit employees to accompany OSHA officers on inspections." *Id.* at 337. Furthermore, the court noted, the statute and implementing regulation explicitly provide that "an authorized employee representative shall be afforded an opportunity to accompany the OSHA inspector during his inspection of a workplace for the purpose of aiding the inspection." *Id.* at 337–38. In view of this clear language, the dictates of the statute and implementing regulation are mandatory. *Id.* at 338.

The court rejected the employer's argument that striking employees must be excluded from inspections because the Act's provisions did not explicitly address the issue of striking employees. *Id.* The court noted that "[s]triking employees are considered 'employees' or 'employee representatives' under the Act. Neither the Act nor its regulations indicate any intent to exclude striking employees from inspections." *Id.* (citation omitted). The court further noted that the Act limits certain employee inspection and walkaround rights (*i.e.,* to protect an employer from revealing trade secrets), but does not do so regarding striking employees. *Id.*

In addition, the regulations promulgated under the Act give OSHA control over inspections, including the right to resolve disputes as to who is the authorized representative of the employer and employee. *Id.* at 339. Moreover, the court noted, OSHA's internal guidelines (IOSHA guidelines mirror the OSHA guidelines) indicate that labor disputes should not affect inspection procedures. *Id.* "While we do not regard these guidelines as law, they do provide further proof of the Secretary's policy determination that strikes have no effect on inspections and thus do not limit employee access to the premises." *Id.*

The court responded to the employer's policy concerns (possible harassment or intimidation of non-striking employees by striking employees) by citing several "administrative safeguards" the court believed would "adequately protect the rights of employers and limit the possibility that private participation in an inspection will result in harm to the employer." *Id.* These safeguards include the following: OSHA must obtain an administrative search warrant if the employer does not consent to an inspection, OSHA compliance officers have the right to terminate the walkaround rights of any person whose conduct interferes with a fair and orderly inspection, and regulations "spell out the proper procedures regarding inspections in order to promote safety and avoid disruptions of the worksite." *Id.* at 339–40.

The court concluded:

> Thus, § 8(e) does not prohibit striking employees from accompanying OSHA compliance officers on inspections. To hold otherwise and to adopt such an overbroad rule would force employees to choose between exercising their National Labor Relations Act right to strike and their OSHA right to accompany inspections. We decline to force that choice upon employees. "The purpose of the Act is to inspect for safety hazards and violations of OSHA regulations," and restricting an employee's participation solely on the basis of his status as a striker would work against this purpose. While we recognize the potential harms from the presence of striking employees on employer premises, the current safeguards adequately protect against abuses. . . . Since an employer may contest citations, opportunity exists for a court to be informed of alleged inspection improprieties and to receive an OSHA response.

*Id.* at 340 (citations omitted).

■ Because Iowa Code section 88.6(4) and its implementing regulation, Iowa Administrative Code rule 875—3.6, mirror section 8(e) of OSHA and its implementing regulation, 29 C.F.R. § 1903.8, the above analysis is persuasive. We adopt it for purposes of analyzing the issue under our IOSH Act. Section 88.6(4) and rule 875—3.6 permit employees or employee representatives to participate in an inspection. The regulations give IOSHA—not the employer—the authority to resolve disputes as to who qualifies as the authorized employee representative. Iowa Admin. Code r. 875—3.6(2). The IOSHA FIRM defines "employee representative" as "a representative of the certified or recognized bargaining agent." Here, the Union had not been decertified at the time the complaint was filed and the inspection warrant obtained. In addition, the IOSHA FIRM provides that unprogrammed inspections will be performed during strikes or labor disputes.

Proper safeguards exist to protect against possible violence by union employee representatives. Iowa Administrative Code rule 875—3.5(4) provides that the conduct of inspections "shall be such as to preclude unreasonable disruption of the operations of the employer's establish-

ment." In addition, Iowa Administrative Code rule 875—3.6(4) and IOSHA FIRM permit IOSHA inspectors to "deny the right to accompaniment to any person whose conduct interferes with a fair and orderly inspection." Iowa Admin. Code r. 875—3.6(4).

An IOSHA inspector explained the necessity of union representation during an inspection:

Q. Why would it be important to have a union representative or an authorized employee representative to accompany you on an inspection? A. During an inspection, we rely heavily on people that [have] knowledge of the overall plant and certain machines. It appeared the inspection [would] cover[ ] quite a few areas of the facility.... [W]ith the strike situation, it sounds like they have had several new employees. [With some of the new employees] English and communication may have been a problem. In order to be able to evaluate a piece of machinery ... [the union] people are helpful....

Q. Why isn't it just sufficient to use the current employees that are there? A. Because ... if you have a newer employee, sometimes it's very difficult for them to determine or know the whole procedure of a machine.

Peno also expressed his opinion as to the necessity of union representation during an inspection:

Q. Why would it be important for a Local 164 representative to participate in this inspection? A. Well, there's many reasons. One, it's a huge facility and just to guide people around. I would want to be assured that if we're talking about 1 banner, that [we're at] 1 banner and not 5 banner.

. . . .

I think that the employees in the facility would be absolutely afraid to go around with OSHA or any supervisors in the facility.... I believe ... we're allowed to go in, to make sure that at least from our estimation that the investigation was conducted properly from OSHA's standpoint and the company.

We conclude striking workers should not be prohibited from accompanying IOSHA inspectors during an inspection. Nothing in the record supports a deviation from the clear language of the applicable statutes and regulations. As IOSHA points out, "[c]ertainly striking employees have an interest in ensuring the safety of the workplace where they hope to return." Judge Jordan did not err in concluding that striking Union representatives could accompany IOSHA inspectors during the inspection of the Titan plant.

## V. Contempt.

### A. Scope of Review.

Although there is no statutory right to appeal from an order to punish for contempt, the proceeding may, in the proper case, be reviewed by certiorari. Iowa Code § 665.11; *Rolek v. Iowa Dist. Ct.*, 554 N.W.2d 544, 547 (Iowa 1996). Because certiorari is an action at law, our review is for correction of errors at law and not de novo. *Rolek*, 554 N.W.2d at 547. A finding of contempt must be established by proof beyond a reasonable doubt. *Id.* The question is whether substantial evidence supports the district court's judgment. *McKinley v. Iowa Dist. Ct.*, 542 N.W.2d 822, 824 (Iowa 1996). Substantial evidence is "such evidence as could convince a rational trier of fact that the alleged contemner is guilty of contempt beyond a reasonable doubt." *Ervin v. Iowa Dist. Ct.*, 495 N.W.2d 742, 744–45 (Iowa 1993).

### B. Applicable law.

Iowa Code chapter 665 is the applicable statutory provision regarding the

contempt action here. Iowa Code section 665.2 lists the actions constituting contempt. The action pertinent here is "[i]llegal resistance to any order." Iowa Code § 665.2(3). Thus, when a contempt is alleged to involve "illegal resistance to any order," *i.e.,* a violation of a court's order, such resistance or violation must be found to be willful. *Rolek,* 554 N.W.2d at 547. "Acting contrary to a known duty may constitute willfulness for this purpose." *Id.*

▮▮▮▮ The party requesting a contempt finding—the contemnee—has the burden of proving that the alleged violator—the contemner—(1) had a duty to obey a court order and (2) willfully failed to perform that duty. *Christensen v. Iowa Dist. Ct.,* 578 N.W.2d 675, 678 (Iowa 1998). Once the contemnee has shown a violation of a court order, the burden shifts to the alleged contemner to produce evidence suggesting the violation was not willful. *Id.* However, the burden of persuasion on the willfulness issue remains on the contemnee. *Id.* There are two recognizable defenses available to the contemner in a contempt action: (1) indefiniteness or uncertainty of the order and (2) absence of willfulness in disobeying the order. *Bear v. Iowa Dist. Ct.,* 540 N.W.2d 439, 440 (Iowa 1995).

### C. Analysis.

Titan had a duty to obey Judge Jordan's April 15 (oral) and 16 (written) order. That order provided that "representatives of the Labor Commissioner should be and they are directed to execute the previously granted inspection warrant dated March 29, 1999, and shall do so in accordance with all provisions of chapter 88 of the Code of Iowa to and including having present for the inspection all entities permitted [by that chapter] and any such others as may be permitted by regulations and to

carry out its duty to inspect." The judge made it clear to Titan that he was not granting a stay and stated that his oral order of April 15 was effective immediately.

Titan violated the judge's order when, on April 16, it refused to permit IOSHA to inspect the Titan plant if Union representatives were allowed to participate. IOSHA therefore met its initial burden of proving Titan had a duty to obey a court order and failed to perform that duty.

The burden shifted to Titan to produce evidence suggesting the violation was not willful. Titan does not contend that the order was indefinite or uncertain. Therefore, its only remaining defense was to produce evidence suggesting the absence of willfulness in disobeying the judge's order.

The basis for Titan's defense that its violation of Judge Jordan's order was not willful is two-fold: First, Titan believed that by appealing to this court it had an automatic ten-day stay. Second, because it did not resist the inspection after our court refused its stay request, it should have been considered to have purged any conduct which may have been contemptuous. Judge Jordan rejected both defenses and found Titan in contempt.

▮▮▮ We first address Titan's argument that its mistaken belief an automatic ten-day stay justified its failure to comply with the terms of Judge Jordan's order. Titan cannot prevail on its mistaken belief argument because it is evident from the district court's ruling that the court did not believe it. As the court noted in its ruling, no provision for an automatic ten-day stay exists in our rules. *See* Iowa R.App. P. 7(a) ("Except upon order entered by the supreme court ... no appeal shall stay proceedings under a judgment or order unless appellant executes a bond with

sureties . . . . "). Judge Jordan found that "Titan Tire Corporation ignored the direction of this court and intentionally resisted the Order of this Court and therefore is in contempt of court." We cannot say that substantial evidence does not support the judge's rejection of Titan's mistaken belief argument and his finding of contempt.

Titan officials understood the requirements of Judge Jordan's order, yet decided not to comply with it. Labor Commissioner Byron Orton testified at the contempt hearing:

> When Mr. Campbell [Titan's Vice President of Operations] advised us that Local 164 officials would not be allowed to accompany OSHA on its inspection, I asked Mr. Campbell if it was true that he had been in Judge Jordan's courtroom the day before, and he indicated that he had.
>
> And I asked him, do you realize that this is not in full compliance with Judge Jordan's order? He indicated that he realized that. I asked him if he understood the seriousness of violating Judge Jordan's order. He indicated he did.
>
> . . . .
>
> Mr. Campbell made reference to the fact that he feared violence if Local 164 accompanied us on the inspection. I advised Mr. Campbell that that argument had been made the day before to Judge Jordan and Judge Jordan had rejected that argument.

■ In support of its argument that it purged itself of contempt, Titan argues it fully complied with Judge Jordan's order immediately following our denial of its stay request, thus eliminating any need for a contempt action. Titan's consent to enforcement of the inspection warrant came *before* the hearing on IOSHA's second petition for contempt.

IOSHA argues that only the district court may provide the option to purge the contempt and the conditions under which the contemner may do so. Judge Jordan did not provide such an option in this case.

We agree. Typically, the district court provides the opportunity and conditions for a contemner to purge the contempt. *See, e.g., Sulma v. Iowa Dist. Ct.*, 574 N.W.2d 320, 321 (Iowa 1998) (district court withheld mittimus, ordering ex-husband could purge himself of contempt by allowing visitation). Here, Judge Jordan rejected Titan's contention that it had purged itself of contempt. As IOSHA argues, Titan cannot "set for itself the conditions under which it will be required to comply with the court's order and when it will be forgiven for its non-compliance." Titan has produced no substantial evidence to show the court's refusal to hold that Titan had purged itself of contempt was in error.

We conclude substantial evidence supports Judge Jordan's finding of contempt.

## VI. Disposition.

In sum, we conclude the district court did not err in denying Titan's motion to quash the inspection warrant and in allowing striking Union representatives to accompany IOSHA inspectors during their inspection of the Titan plant. We therefore affirm on the appeal. Substantial evidence existed to support the district court's finding that Titan was in contempt for denying entry to IOSHA inspectors on April 16, 1999, as the court had ordered. The writ of certiorari is therefore annulled.

In reaching our decision, we have carefully considered all of Titan's arguments and contentions whether or not we have addressed them. Those we have not addressed we find either lack merit or have not been preserved for our review.

**AFFIRMED ON APPEAL; WRIT ANNULLED.**

All justices concur except CADY, NEUMAN, and TERNUS, JJ., who concur in part and dissent in part.

CADY, Justice (concurring in part and dissenting in part).

I respectfully dissent to that portion of the opinion of the majority that annuls the writ of certiorari. I would grant the writ and reverse the finding of contempt by the district court. In my view, no person should be found in contempt of court for failing to comply with a court order when that person reasonably relied, in good faith, upon the erroneous advice of counsel that the order had been stayed by court rule and did not need to be followed. I otherwise concur in the opinion of the majority.

Courts are given the power to punish for contempt only if the disobedience of a court order was willful. This requires evidence that the conduct was "intentional and deliberate with a bad or evil purpose, or wanton and in disre[spect] [to] the rights of others, or contrary to a known duty, or unauthorized, coupled with an unconcern whether the contemner had the right or not." *Christensen v. Iowa Dist. Ct.*, 578 N.W.2d 675, 678 (Iowa 1998) (citations omitted). Proof must be beyond a reasonable doubt. *French v. Iowa Dist. Ct.*, 546 N.W.2d 911, 914 (Iowa 1996). The standard is high, because the consequences can be great.

The majority concludes substantial evidence supports the district court's finding of willfulness. Yet, evidence is substantial only when reasonable minds could accept it as adequate to reach the same result. *Hendricks v. Great Plains Supply Co.*, 609 N.W.2d 486, 490 (Iowa 2000).

In this case, the evidence is undisputed that Titan's attorneys told Titan officials that an automatic stay of the court order was in effect and it was unnecessary for Titan to comply with the order. In fact, when the investigators arrived at the plant to inspect the premises pursuant to the court order, a Titan representative gave the inspectors a document that said:

We have filed an appeal with the Iowa Supreme Court. We have asked for a stay. We believe we have an automatic stay for 10 days.

This document was written by one of Titan's own attorneys, who mistakenly believed Iowa's appellate rules followed the federal appellate rules which provide for a ten-day stay following the filing of a notice of appeal. The document was admitted into evidence at the contempt hearing, and a Titan official provided further evidence confirming the reason for its failure to comply with the order. Moreover, the investigators who arrived at the plant pursuant to the order all testified the Titan official refused to comply with the order based upon the claim of a stay.

The majority claims substantial evidence exists to support a finding of contempt by quoting from the testimony of the commissioner of labor, who had accompanied the investigators to the plant. This testimony, however, misses the point and establishes nothing. Even though Titan knew its refusal was contrary to the court order, it believed, in good faith, that the order was not in effect.

It is important to recognize that the refusal to comply with the court order did not go to the merits of the dispute, but was strictly procedural. Titan believed the court's own rules had stayed the effect of the order. Thus, it was reasonable for Titan not to comply with the order. Furthermore, the noncompliance was in good faith, and the district court had no basis in

law or fact to reject the evidence. There was no evidence to even suggest that Titan's attorneys never told Titan the order had been stayed. Thus, the district court had no basis to reject Titan's claim based on a conflict in the evidence or for any other reason. An attorney is ethically bound only to present evidence at a court hearing that is based in fact. *See* DR 7–102(A)(4) (attorney shall not knowingly use false evidence); DR 7–106(C)(1) (attorney shall not mention any matter "that will not be supported by admissible evidence"). Attorneys are officers of the court. *Comm. on Prof'l Ethics & Conduct v. Humphrey,* 377 N.W.2d 643, 648 (Iowa 1985); *In re Inquiry Concerning Eads,* 362 N.W.2d 541, 551 (Iowa 1985). These precepts are especially relevant when an attorney presents a witness to the court who testifies to advice the attorney gave to the witness.

We have previously indicated that advice of counsel is not a defense to a contempt action. *See Palmer College of Chiropractic v. Iowa Dist. Ct.,* 412 N.W.2d 617, 621 (Iowa 1987) (where record did not detail the specific advice provided by counsel). However, this does not mean proof of willfulness to support contempt is not needed when noncompliance with an order is based upon the advice of counsel.

As a matter of law, Titan could not have contemptuously violated the court order in this case. *See Mellor v. Cook,* 597 P.2d 882, 884 (Utah 1979) (no willful disobedience to support contempt by school board for holding a meeting in violation of a court order where the board had been advised by its attorney that the order was not valid). The advice of counsel in this case did not relate to a refusal to comply with the court order, but related solely to the existence of court rules that excused performance. Under our system of justice, litigants should be entitled to rely upon their attorneys' advice under such circumstances without being subjected to punishment for contempt of court.

Courts are given the power of contempt to protect and uphold the integrity of the court system. *Haines v. Dist. Ct.,* 199 Iowa 476, 481, 202 N.W. 268, 270 (1925). This purpose was not accomplished in this case. It is simply unfair to criminally punish a litigant for the good faith, procedural mistakes of counsel, and to do so only undermines public confidence in the legal profession and our system of justice itself.

NEUMAN and TERNUS, JJ., join this consent in part and dissent in part.